### In the Interest of B.C.

### Appeal of: J.C., Biological Father.

Superior Court of Pennsylvania.

Submitted Aug. 15, 2011.

Filed Jan. 13, 2012.

Robert J. DiBuono, Ellwood City, for appellant.

Deborah A. Shaw, New Castle, for C., B., appellee.

Larry J., Puntureri, New Castle, for C. V., appellee.

Joanne D. Nene, New Castle, for Lawrence County Children and Youth, participating party.

BEFORE: ALLEN, LAZARUS, and OTT, JJ.

OPINION BY ALLEN, J.:

J.C. ("Father") appeals from the order dated April 13, 2011, and entered April 18, 2011, in the Court of Common Pleas of Lawrence County, terminating the parental rights to his son, B.C. (d.o.b.8/8/08) ("Child"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(8) and (b). For the following reasons, we affirm.

The trial court accurately summarized the history of this case as follows:

[The Lawrence County Children and Youth Services ("CYS")] initiated a case file regarding the [Child] in August of 2008 after receiving several calls regarding the natural parents' ability to care for him. Shortly thereafter, in September of 2008, [CYS] petitioned this Court to grant them legal and physical custody. This Court granted [CYS's] request, but the parents fled to North Dakota prior to [CYS] obtaining physical custody of [Child]. With the assistance of the North Dakota law enforcement agency, [Child] was found and returned to Lawrence County in January of 2009; [Child] has remained in [CYS's] care since that time. See In re: B.C., at case No. 225 of 2008, Dep. Lawrence County, Pennsylvania.

[Father] was subsequently incarcerated on charges relating to fleeing the jurisdiction of this Court with the minor child in question. He was eventually released in June, 2009, and a family service plan was established on his behalf.

On January 10, 2011, [CYS] filed a Petition for Involuntary Termination of Parental Rights with respect to [Father]. In the petition, [CYS] averred that the conditions which led to the initial placement of the minor child have continued to persist without resolve and that termination would therefore be in [Child's] best interests.

A hearing was held on April 8, 2011, wherein this Court confirmed [the Consent to Adoption of Child's natural mother, V.C. ("Mother")], and subsequently heard testimony regarding the Petition for Involuntary Termination of [Father's] parental rights. [Father] did not appear despite his counsel's efforts to contact him and [make] proper service upon him, evidenced by the green card receipt, on January 13, 2011. Additionally, Ms. McConahy, who testified on behalf of [CYS], as the minor child's caseworker, stated that she saw [Father] several days prior to the termination hearing and reminded him of the same being scheduled.

Ms. McConahy was very candid with the Court in describing [Father's] efforts to comply with the family service plan. She stated that [Father] was, for the most part, cooperative with CYS throughout the history of this case, with the exception of his flight to North Dakota. Ms. McConahy additionally stated that [Father] had good attendance for most of his scheduled visitations with the minor child. However, Ms. McConahy went on to describe [Father's] visits as more routine in nature, and lacking any real effort to develop any appropriate bond with [Child]. This fact was apparent from [Father's] limited involvement with the child during visitations, and the child's inability to emotionally connect with [Father].

Trial Court Opinion, 6/2/11, at 2–4.

In an order dated April 13, 2011, and entered April 18, 2011, the trial court granted the petition of CYS and terminated Father's parental rights to Child. Father filed a timely notice of appeal from the trial court's order on May 12, 2011, along with a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b).

On appeal, Father presents two interrelated issues for our review:

1. Was the evidence insufficient to terminate the parental rights of the [Father] where the amended [Child's] permanency plan contained elements[,] which were financially prohibitive to the appellant?

2. Was the evidence insufficient to terminate the parental rights of the [Father] where the amended [Child's] permanency plan contained elements[,] which were unduly repetitive, burdensome and prohibitive?

Father's Brief at 5.

■ At the outset, we note that Father's claims on appeal are waived for the purpose of our review, as a result of his failure to raise these issues at the termination hearing. The Pennsylvania Rules of Appellate Procedure require that issues not raised in the lower court be waived because they cannot be raised for the first time on appeal. Pa.R.A.P. 302. Father did not raise these issues before the trial court at the termination hearing. Accordingly, these issues are waived. *In Interest of R.P.,* 957 A.2d 1205, 1222 (Pa.Super.2008) (issues raised for the first time on appeal are waived and cannot be considered). In addition, our Supreme Court has held that the Rule 1925(b) statement cannot be used to raise a claim for the first time on appeal. *Steiner v. Markel,* 600 Pa. 515, 968 A.2d 1253, 1257 (2009). Although Father was not present at the termination hearing, Father's counsel attended the hearing and cross-examined the witnesses at the hearing. In his cross-examination of the witnesses, Father's counsel did not raise either of the issues presently on appeal, asserting the financial hardship of the Family Safety Plan ("FSP"), or the redundancy and unreasonable burden of the goals in the FSP. *See* N.T., 4/8/11, at 36–53. Since Father did not raise his appellate issues at trial, CYS was denied the opportunity to address them at the hearing, and we are precluded from meaningful review. Although Father does not raise any cognizable claims regarding the termination of his parental rights, we proceed, *arguendo,* to address the trial court's order.

■ The standard and scope of review applicable in termination of parental rights cases are:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.,* 843 A.2d 380, 383 (Pa.Super.2004) (en banc).

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.,* 803 A.2d 224, 228 (Pa.Super.2002) (internal citations and quotation marks omitted).

■■ The standard of clear and convincing evidence means testimony that is

so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super.2002). If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191 (Pa.Super.2004).

■■■■ The termination of parental rights is controlled by statute, 23 Pa.C.S.A. § 2511 *et seq. See also In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa.Super.2006). Under Section 2511, the trial court must engage in a bifurcated process. The initial focus is on the conduct of the parent. *In re A.L.D.*, 797 A.2d 326, 339 (Pa.Super.2002). The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds in Section 2511(a). If the trial court determines that the parent's conduct warrants termination under Section 2511(a), it must engage in an analysis of the best interests of the child under Section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child. *R.J.S.*, 901 A.2d at 508; *See also In re I.J.*, 972 A.2d 5, 10 (Pa.Super.2009).

■■■■ We note that we may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super.2000) (*en banc*). Here, Father's brief states that the trial court relied upon Section 2511(a)(1), (2), (5), and (8), in terminating his parental rights. However, our review of the certified record reveals that CYS filed its petition solely on the grounds of Section 2511(a)(8). Additionally, the trial court order states, "the Court finds the testimony [of CYS] credible and sufficient to establish by clear and convincing evi-

dence the grounds for involuntary termination of the parental rights of the natural father pursuant to 23 Pa.C.S.A. 2511(a)(1) and (8)." Trial Court Order, 4/18/11, at 2. However, in its opinion, the trial court cites Section 2511(a)(5) as the relevant statutory provision applicable to this appeal. Nonetheless, as we may affirm a termination order based on any subsection of Section 2511(a) on appeal, we deem that termination was proper and we focus our review on Section 2511(a)(5) and (8). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super.2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (stating that this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights").

Accordingly, the relevant statutory basis for involuntary termination in this case is as follows:

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or

under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(5), (8), and (b).

To satisfy the requirements of Section 2511(a)(5), the moving party must produce clear and convincing evidence regarding the following elements: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1273–74 (Pa.Super.2003).

In concluding that the termination of Father's parental rights was proper, the trial court provided the following analysis:

A review of [CYS's] family service plan indicated that the primary goals for [Father] included cooperation with [CYS's] services, establish stable housing for himself and the minor child, enroll in parenting skills program, address any/all drug and alcohol issues, develop a relationship with the minor child, address any mental health issues, attend individual anger management counseling and undergo a sexual offender evaluation. The Court, being very experienced with child dependency cases, notes that not only are the goals established by [CYS] necessary and appropriate given the circumstances surrounding [Child's] placement, but many of the necessary elements of [Father's] family service plan could have been completed with the help of the local human services agency without cost to [Father]. Although [Father] had been cooperative and routinely visited with the minor child, the one real factor missing is effort. This is clearly established by [Father's] behavior during his routine visits with the minor child, as well as his complete failure to discuss the termination proceedings with his court appointed counsel or show up for the hearing.

[Father] next alleges that the trial court erred in granting [CYS's] Petition for Involuntary Termination because the elements of the family service plan were unduly repetitive, burdensome and prohibitive to [Father]. Following the same logic and discussion following [his] first error complained of, the Court finds [Father's] second error complained of again without merit.

Trial Court Opinion, 6/2/11, at 6–7.

For the first part of our analysis, we note that Child came into the care of

CYS in January of 2009, after being removed from Father's care, and CYS filed the termination petition approximately two years later, in January of 2011. Thus, Child has been removed from the care of Father far beyond the six-month period prescribed by Section 2511(a)(5).

We next review whether the conditions which led to Child's removal continue to exist. At the hearing, CYS caseworker, Megan McConahy, testified. N.T., 4/8/11, at 14. She stated that she had a mail receipt indicating that Father was aware of the termination hearing. *Id.* at 16. Additionally, she stated that she talked to Father on the phone a few days before the hearing to remind him. *Id.* Nonetheless, Father did not attend the termination hearing. *Id.* at 18–19.

Ms. McConahy testified that Child came into the care of CYS as a result of several reports that Father and the Child's mother were unable to care for Child. *Id.* at 19. She also stated that there were aggravated circumstances relative to the dependency adjudication of Child because Father had been convicted of statutory sexual assault of a child. *Id.* at 20. Ms. McConahy testified that Father had two indicated Childline reports against him relating to sexual abuse. *Id.* at 32. The first incident occurred in Mercer County in 1996, and resulted in Father serving five years of incarceration. *Id.* at 20–21. The second incident of sexual assault occurred in Lawrence County and involved a daughter of Father, S.C.

Although CYS was not required to provide services to Father because of the aggravated circumstances,[1] Ms. McConahy provided Father with a Family Service Plan ("FSP") which directed him to: (1) cooperate with CYS; (2) establish stable housing for him and Child and maintain that home for at least six months; (3) attend a parenting program; (4) address any and all drug and alcohol issues through assessment and treatment; (5) maintain visitation with Child; (6) address mental health issues by obtaining an evaluation and treatment; (7) address anger management issues through Clover Psychological; and (8) seek treatment relating to his history as a sexual offender. *Id.* at 21–25.

Ms. McConahy testified that Father was cooperative with the agency in returning phone calls and signing all necessary releases. *Id.* at 25–26. Father had four different housing situations during the course of the case, but routinely did not provide CYS with addresses or other information so that they could ascertain the suitability of the housing for Child. *Id.* at 26. Ms. McConahy testified that she visited Father's current home and described it as "not an appropriate home" for Child because there were multiple adults living there, with no furnishings or room for Child. *Id.* at 41–42. She also described the condition of the home as "deplorable." *Id.* at 42.

Ms. McConahy stated that Father completed a parenting class and attended visitation with Child for one hour, every other week, from August 12, 2009 to April 6, 2011, with the exception of five visits where Father either canceled, did not attend, or was incarcerated. *Id.* at 26. Ms.

---

1. The notes of testimony reveal that during the dependency phase of this case, the trial court entered a permanency review order on July 24, 2009, which states, "Although aggravated circumstances as defined at 42 Pa.C.S. 6302 exist with respect to [Father] since he has been previously convicted of the felony of statutory sexual assault, the current placement goal regarding the child is determined to be a return to the home, and further efforts to preserve or reunify the family with respect to both parents shall continue to be made." N.T., 4/8/11, at 39.

McConahy also stated that CYS did not receive any documentation regarding Father's mental health evaluation. *Id.* at 27. Ms. McConahy relayed that she received a psychiatric evaluation dated February 8, 2010. *Id.* at 27. However, Father refused to take the medication prescribed to him following that evaluation. Additionally, Father did not provide any information to indicate that he addressed his goal of anger management or addressed his history as a sexual offender. *Id.* Based on the review of this testimony, the record is replete with instances of Father's failure to remedy the parental deficiencies that led to Child's removal.

Relative to the third element of our Section 2511(a)(5) analysis, we conclude that the trial court properly relied on Ms. McConahy's testimony for its conclusion that Father will not remedy the conditions which led to Child's placement. The record reflects that Father is a two-time perpetrator of sexual abuse of a child. Yet, Father has refused to obtain treatment for his illicit proclivities. N.T., 4/8/11, at 27, 32. Ms. McConahy credibly testified that Father did not provide any information to CYS regarding treatment for anger management or sexual abuse, and Father did not refute this testimony. *Id.* at 27. Additionally, at a basic level, Father was unable to demonstrate that he could provide a suitable home for Child. Ms. McConahy testified to the deplorable condition of Father's home and its unsuitability for Child. *Id.* at 41–42. In light of the gravity of these issues, and Father's status as a recidivist sexual offender, the trial court was well within its purview to conclude that the evidence was sufficient to prove that Father either could not or would not remedy the parenting deficiencies that led to Child's removal.

Next, we review whether the services and assistance provided by CYS were like-ly to remedy the conditions which led to placement within a reasonable amount of time. CYS was not required to provide services to Father as a result of the finding of aggravated circumstances. Nonetheless, the record reflects that CYS provided Father with an FSP, as discussed *supra.* Ms. McConahy testified that she mailed Father's initial FSP to him in February of 2009, when he was incarcerated for statutory sexual assault of a child. N.T., 4/8/11, at 20–21. After his release from prison, Ms. McConahy testified that Father was provided with a more detailed FSP. *Id.* at 21. We again note there is no indication that beyond the directives of CYS, Father sought further assistance, either financial or otherwise. Rather, the record reflects a two-year history of Father's apathy relative to his FSP goals, including his failure to attend many of the hearings pertaining to Child's dependency. *See Id.* at 34. More importantly, we emphasize that the seriousness of Father's history of committing sexual assault in conjunction with his failure to receive any treatment for this issue, indicates that Father is at risk of reoffending.

 Our law is well established that once a child is removed from the care of the parent, the burden is on the parent to take action to regain parental rights. *See In re Z.P.,* 994 A.2d 1108, 1118–19 (Pa.Super.2010) (holding that parental obligation is a positive duty which requires affirmative performance). We will not permit Father's parental inertia to toll the permanency needs of Child in this case. *In re B.,N.M.,* 856 A.2d 847, 856 (Pa.Super.2004) ("[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment."). Although

Father cooperated with CYS in providing the necessary releases, the fact remains that Father's mental and emotional issues, which require anger management and sexual offender treatment, remained unaddressed at the time of the termination hearing. Father is either unable or unwilling to take affirmative action to rehabilitate his life and his relationship with Child. As such, we discern no error in the conclusion of the trial court that the assistance and services provided by CYS were not likely to remedy Father's parenting deficit.

Finally, we review whether termination is in the best interests of Child. We cite the following analysis of the trial court with approval:

> Given the Court's determination that the statutory grounds for involuntary termination were established, the Court's determination turned to whether the best interests of the minor child may be served by terminating [Father's] parental rights. [Child] was placed in [CYS's] care in January of 2009; since that time[,] neither parent was able to provide a stable and nurturing environment in which the minor child could grow. The Court has closely monitored [Child's] development since placement

and believes that the agency has continued to care for the minor child in an appropriate manner where the child's emotional, physical, intellectual and developmental needs are met. As such, it was the Court's determination that terminating [Father's] parental rights was in the minor child's best interests.

Trial Court Opinion, 6/2/11, at 8.

The protracted history of this case extends more than two years, during which time Father, with the exception of a few weeks of incarceration, visited Child for one hour every other week from August of 2009 through April 6, 2011. N.T., 4/8/11, at 26. During these two years, Father failed to demonstrate that he was capable of providing for the physical, mental, and emotional well-being of Child. This Court has long emphasized the importance of permanency in the lives of children. Father's two hours of supervised visitation per month with Child for the past two years was not enough to constitute legally significant contact. *See In re Z.P.*, 994 A.2d at 1109. We agree with the trial court that terminating Father's parental rights will provide Child with the opportunity he deserves, rather than further languishing in the uncertainty of foster care.[2] Accordingly, we are unable to discern any

2. There is a recognized connection between Pennsylvania law on termination of parental rights and the federal Adoption and Safe Families Act ("ASFA"), the stated policy of which is:

> [T]o remove children from foster placement limbo where they know neither a committed parent nor can [they] look toward some semblance of a normal family life that is legally and emotionally equivalent to a natural family.... States such as Pennsylvania, which participate in the program, are required to return the child to its home following foster placement, but failing to accomplish this due to the failure of the parent to benefit by such reasonable efforts, to move toward termination of parental rights and placement of the child through

adoption. Foster home drift, one of the major failures of the child welfare system, was addressed by the federal government by a commitment to permanency planning, and mandated by the law of Pennsylvania in its participation in the Adoption and Safe Families Act of 1997. Succinctly, this means that when a child is placed in foster care, after reasonable efforts have been made to reestablish the biological relationship, the needs and welfare of the child require CYS and foster care institutions to work toward termination of parental rights, placing the child with adoptive parents. It is contemplated this process realistically should be completed within 18 months.

*In re G.P.-R.*, 851 A.2d 967, 975–76 (Pa.Super.2004).

error in the trial court's termination of Father's parental rights to Child pursuant to Section 2511(a)(5).

■ We additionally find that the grounds to termination pursuant to Section 2511(a)(8) were met. When examining claims in relation to Section 2511(a)(8), we follow established case law. In order to demonstrate that termination is proper pursuant to Section 2511(a)(8), CYS must prove by clear and convincing evidence that: (1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *In re C.L.G.*, 956 A.2d 999, 1005 (Pa.Super.2008).

As discussed above, Child has been removed from Father's care for almost two years; accordingly, the first element of Section 2511(a)(8) has been met. Next, the conditions that led to Child's removal, *i.e.* Father's parenting deficit, continues to exist, as credibly testified to by Ms. McConahy, *supra*. Finally, we reiterate that termination of Father's parental rights best serves the needs and welfare of Child pursuant to the aforementioned reasoning. We note that, unlike Section 2511(a)(5), Section 2511(a)(8) does not require an evaluation of the remedial efforts of either the parent or CYS. *C.L.G.*, 956 A.2d at 1007. Instead, Section 2511(a)(8) imposes a lengthier removal period of one year. Here, Child has been removed far beyond the one-year statutory requirement of Section 2511(8). Accordingly, we find that the trial court's termination of Father's parental rights pursuant to Section 2511(a)(8) was proper.

■ Although Father does not challenge the termination of his parental rights relative to Section 2511(b), an evaluation of the needs and welfare of the Child in this regard is central to our review.

This Court has held that the trial court is not required by statute or precedent to order that a formal bonding evaluation be performed by an expert. *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa.Super.2008). In *In re K.Z.S.*, 946 A.2d 753 (Pa.Super.2008), this Court stated that there are some instances where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child. *Id.*, 946 A.2d at 762. This Court explained that, in cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. *Id.* at 763. "The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *Id.*

The *In re K.Z.S.* Court emphasized that, in addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child. *Id.*

*In re A.S.*, 11 A.3d 473, 483 (Pa.Super.2010).

At the termination hearing, Ms. McConahy described Father's visits with Child. She testified that Father's visits were always supervised and that Father usually sat on the couch instead of sitting on the floor to play with Child. *Id.* at 28. She stated that Father usually spent the majority of his time talking to the visitation supervisor instead of Child. Ms. McCo-

nahy opined that there was no bond between Father and Child and that Child does not identify Father as his father. *Id.* at 28. She observed that Child does not express any happiness or emotion when he visits with Father. *Id.* at 29. Ms. McConahy relayed that Child is currently in a pre-adoptive home. *Id.* at 33.

Based on the testimony of Ms. McConahy, in conjunction with the length of time that Child has been in the custody of CYS and the care of his foster parents, we find that CYS met its burden relative to Section 2511(b). *See In re A.S.*, 11 A.3d at 484 (relying, in part, on the testimony of a social worker for the conclusion that termination relative to Section 2511(b) was proper). Father's periods of supervised visitation of approximately two hours per month were insufficient to foster a meaningful and healthy parental connection. Moreover, the testimony of Ms. McConahy, as credited by the trial court, reveals that Child is healthy and happy in his pre-adoptive home. Finding no error in the trial court's termination of Father's parental rights pursuant to Section 2511(a)(5), (8), and (b), we affirm the order of the trial court.

Order affirmed.

Judge LAZARUS files a Dissenting Statement.

## DISSENTING STATEMENT BY LAZARUS, J.:

I respectfully dissent. I disagree with the majority's holding that Father's claims are waived. The majority relies on *In Interest of R.P.*, 957 A.2d 1205 (Pa.Super.2008). However, I believe *R.P.* is distinguishable and, therefore, the majority's reliance on it to justify waiver is misplaced.

Essentially, Father's claims challenge the sufficiency of the evidence to terminate his parental rights in light of a "financially prohibitive, repetitive, and burdensome" permanency plan. Since exceptions are no longer allowed in termination cases, *see* Pennsylvania Orphans' Court Rule 7.1(e) ("No exceptions shall be filed to any order in involuntary termination or adoption matters under the Adoption Act, 23 Pa. C.S. Section 2501, *et seq.*"), the first opportunity Father had to challenge whether the evidence clearly and convincingly established termination under 23 Pa.C.S. § 2511 was on appeal, in a Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal. Father filed his 1925(b) Statement, and the trial court addressed the claims in its opinion.

In *R.P.*, on which the majority relies, the trial court in a dependency adjudication precluded Mother's counsel from reviewing notes used to refresh the recollection of three medical experts during cross-examination. Counsel did not object to the court's ruling, and this Court found the claim waived when Mother raised the issue on appeal. *Id.* at 1222. *See also In re: S.C.B.*, 990 A.2d 762 (Pa.Super.2010) (mother's failure to raise issue at six days of hearings deprived trial court of opportunity to rule on necessity for guardian *ad litem* to continue to participate at time of hearings). A specific objection in that context is required so that the trial court has an opportunity to correct the error, if any. *S.C.B.*, *supra*. In my view, a termination case where the claim is whether the evidence supports termination under the statute, is quite different.

My review of the case law in termination of parental rights cases reveals considerable restraint in the use of the waiver doctrine, and properly so. In termination cases, waiver of the issue of whether the statutory grounds have been established for termination has been limited to failure to file a Rule 1925(b) statement, failure to

include a claim in the Rule 1925(b) statement, or failure to develop the argument on the issue in the appellate brief. *See, e.g., In re J.K.,* 825 A.2d 1277 (Pa.Super.2003) (claim that termination of mother's parental rights was not supported by competent evidence was waived where such issue was not argued in mother's brief, nor preserved through mother's statement of appeal); *In re K.T.E.L.,* 983 A.2d 745 (Pa.Super.2009) (because mother's challenges to statutory grounds for terminating her parental rights were not raised in statement of questions involved on appeal, they were waived on appeal). *See also In re J.T.,* 983 A.2d 771, 774–75 (Pa.Super.2009) (recognizing "unique nature" of parental termination cases and holding that a "late filing of a required Rule 1925(b) statement does not mandate a finding of waiver."). In my opinion, it is inappropriate in a termination of parental rights case to require an objection at some point during the trial or hearing to preserve what boils down to a sufficiency of evidence claim.[1]

Although the majority finds waiver, it continues, in *dicta,* to review the issues and concludes that the evidence was sufficient to support termination under sections 2511(a)(5) and 2511(a)(8). Because the majority has determined the issues were waived, I find it unnecessary to address the merits of the issues raised.

---

1. By way of analogy, a defendant in a criminal case may raise the issue of sufficiency of the evidence for the first time on appeal. Pennsylvania Rule of Criminal Procedure 606(A) provides: "A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged in one or more of the following ways: ... (7) a challenge to the sufficiency of the evidence made on appeal. Pa.R.Crim.P. 606(A)(7). sufficiency of the evidence for the first time on appeal. Pennsylvania Rule of Criminal Procedure 606(A) provides: "A defendant may challenge the sufficiency of the evidence to sustain a conviction of on one or more of the offenses charged in one or more of the following ways: ... (7) a challenge to the sufficiency of the evidence *made on appeal.* Pa.R.Crim.P. 606(A)(7) (emphasis added).