J-S59030-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.L., C.L., MINOR CHILDREN | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.G., MOTHER | : | No. 746 WDA 2015 |

Appeal from the Order April 15, 2015,
Court of Common Pleas, Washington County,
Orphans' Court at No(s): 63-13-1516
and 63-13-1517

---

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.L., C.L., MINOR CHILDREN | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.G., MOTHER | : | No. 747 WDA 2015 |

Appeal from the Order entered April 15, 2015,
Court of Common Pleas, Washington County,
Orphans' Court at No(s): 63-13-1517
and 63-13-1516

BEFORE:  BOWES, DONOHUE and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED SEPTEMBER 24, 2015**

Appellant, K.G. ("Mother"), appeals from the order of the trial court terminating her parental rights to her two children, C.L. (born June 12, 2010) and Ch.L. (born September 14, 2011) (together, the "Children").  For the reasons that follow, we affirm the trial court's order granting the petition to terminate parental rights filed by the Washington County Children and Youth Services Agency ("CYS").

---

*Former Justice specially assigned to the Superior Court.

In its written opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, the trial court set forth the following facts relevant to Mother's appeal:

> The Mother is 27 years old. (T.T. 11/13/14, P. 5) She has no birth certificate. She was not born in a hospital; her mother reported that she gave birth to Mother in a car somewhere between Arizona and Florida. (T.T. 11/5/14, P. 65) Because she has no birth certificate, the Mother has been unable to obtain a social security number. (T.T. 11/13/14, P. 8) She grew up in Lakeland, Florida and attended school through the eighth grade, but was not permitted to attend high school due to a lack of a birth certificate. (T.T. 11/13/14, P. 7-8)
>
> * * *
>
> CYS first became involved with the family on September 14, 2011, at the birth of Ch.L. The hospital staff reported concerns to CYS that Mother lacked any identification and that Father was very controlling of Mother, answering questions for her. (T.T. 8/6/14, P. 95) At the time, the Mother, Father, the two children and the Father's wife were all living together. (T.T. 11/5/14, P. 29) In early 2012, after an argument between Mother and Father's wife Christina, the Mother and [Children] moved to a women's shelter in Allegheny County. (T.T. 11/13/14, P. 30-32) After a few months, they left and returned to the home of the Father. In October of 2012, CYS located the family and went to the residence. CYS found that the home was in a deplorable and filthy condition and was inadequate for the seven adults and two children living there. (T.T. 8/6/14, P. 99) The Children were removed by emergency shelter order and placed in foster care on October 16, 2012, where they have remained. (T.T. 8/6/14, P. 100)

The Children were adjudicated dependent on December 3, 2012. The allegations of dependency were deplorable living conditions, the Father's status as a Megan's Law offender and his serious mental health issues and the lack of verifiable identity of Mother. (Exhibit 6; Dep. Pet. P. 5 of 5) Over the course of the dependency case, the parents have been ordered to obtain and maintain appropriate housing, to complete a parenting educational training and to obtain a mental health evaluation and follow through with any treatment.

\* \* \*

The parents have moved at least four times in the last two years. They lived in a trailer in Canton Township, then moved to Washington, then to West Alexander and in January of 2014 to Eighty-Four, Pennsylvania, where they have remained. (T.T. 8/6/14, P. 118) Their current housing was found with the assistance of CYS and is appropriate, although some issues of cleanliness have arisen. (T.T. 8/6/14, P. 170) The parents completed the parenting program through Justice Works. (T.T. 8/6/14, P. 105) The Mother has not obtained a mental health evaluation because she lacked identification. (T.T. 8/6/14, P. 105) However, as part of an interactional evaluation that was performed by Dr. Neil Rosenblum, a clinical psychologist, a mental health assessment and testing was conducted. Mother was diagnosed with panic disorder with agoraphobia (Axis I), R/O Social Anxiety Disorder (Axis I) and Mild Mental Retardation (Axis II) with an IQ of 60 and a very limited reading ability. (Exhibit 2)

\* \* \*

The parents have weekly supervised visitation for five hours. (T.T. 8/6/14, P. 123)

\* \* \*

Dr. Rosenblum conducted an interactional evaluation with the parents and the Children and the foster parents and the Children. He supported the termination of the parents' rights. (T.T. 8/6/14, P. 44) The CYS caseworker testified that, in her opinion, the Children would not suffer any detrimental effects if the parents' rights were terminated. (T.T. 8/6/14, P. 129-30) The Guardian Ad Litem also supported the termination of the parents' rights. (T.T. 11/13/14, P. 69)

Trial Court Opinion, 6/12/2015, at 1-5.

CYS filed a petition to terminate Mother's parental rights on December 24, 2013. The trial court conducted evidentiary hearings on August 6, 2014, November 5, 2014, November 5, 2014, and November 13, 2014. On April 15, 2015, the trial court issued an order granting CYS's petition and terminating Mother's parental rights. On appeal, Mother raises the following two issues for our review and determination:

1.  Whether the [trial court] erred as a matter of law by terminating Mother's parental rights since Mother could not secure stable housing , seek employment, apply for state benefits, since she has attempted by is unable to obtain a birth certificate, social security number, or state-issued identification card, which prevented mother from completing court-ordered services rendering her unable to rectify the conditions which led to [Children] being without essential parental care, control or subsistence necessary to take care of [Children].

2.  Whether the trial court erred as a matter of law since Mother's rights were terminated pursuant to § 2511(b), since Mother's rights were terminat[ed] on the basis of environmental factors such as inadequate housing, furnishings, clothing, and medical care that were beyond the control of Mother.

Mother's Brief at 5.

We review the appeal from the termination of parental rights in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As [the Pennsylvania Supreme Court] discussed in [*In re: R.J.T.*, 9 A.3d 1179 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and

> the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

When deciding a case falling under section 2511, the trial court must engage in a bifurcated process. In that analysis,

> [t]he initial focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds in section 2511(a). If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must engage in an analysis of the best interests of the child under section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child.

*In re B.C.*, 36 A.3d 601, 606 (Pa. Super. 2012).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Here, the trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5), (8) and (b). We will analyze the trial court's decision to terminate Mother's parental rights under section 2511(a)(1) and (b).

These sections provide:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to

subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)-(b).

Section 2511(a)(1) provides that a parent's rights may be terminated if, inter alia, the parent has failed to perform parental duties for at least six months immediately preceding the filing of the petition. 23 Pa.C.S.A. § 2511(a)(1). Although this section references the six months immediately preceding the filing of the petition as most critical to the analysis, this Court has held that "the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re E.M.*, 908 A.2d 297, 303 (Pa. Super. 2006) (quoting *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004)). The trial court in this case indicated that it evaluated the Mother's conduct not only during the six months prior to the filing of the petition (June 2013 through December 2013), but also "took a broader approach and considered all of the conduct of the parties until the hearing date." Trial Court Opinion, 6/12/2015, at 8.

Our Supreme Court has stated that parental duty "is best understood in relation to the needs of a child."

> A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which

- 8 -

requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child..

*In re J.T.*, 983 A.2d 771, 777 (Pa. Super. 2009) (quoting *In re Burns*, 474 615, 379 A.2d 535, 540 (Pa. 1977)).

For her first issue on appeal, Mother contends that CYS introduced "absolutely no evidence" of any failure to perform her parental duties, as she completed the parenting course and attended all of the supervised visitations. Mother's Brief at 10-11. We must disagree, as the trial court reached the following determinations relevant to this inquiry:

Mother has taken very few steps to show that she desires to parent her children. While she states that she has applied for a social security number over fifty times, she has taken no real action to do so. CYS assisted Mother in obtaining DNA from Mother and her mother, to verify who she was. The [M]other then obtained an affidavit from her mother which stated the general circumstances of her birth but the Mother reported no further efforts to obtain a birth certificate. The impediment to obtaining a birth certificate, it seems to the court, is that the Mother does not know where she was born. A deposition or other testimony of the Mother's mother could clarify that issue so that the jurisdiction where legal action should be taken could be established. But the [M]other and her attorney have not taken that action. The Mother's limited intellectual functioning, panic disorder and lack of identity make Mother dependent on Father and the victim of manipulation. She has evidenced no ability to independently take care of herself, and certainly not the ability to take care for two small children. Neither parent has any community support.

Trial Court Opinion, 6/12/2015, at 9-10. The certified record on appeal amply supports these factual findings.

Once the evidence establishes a failure to perform parental duties, the trial court must engage in an inquiry regarding the parent's explanation for his or her conduct. *In re Adoption of Charles E.D.M.*, 550 Pa. 595, 708 A.2d 88, 92 (1998). Here, Mother argues that the principal reason for her inability to provide a suitable home and financial support for Children is her lack of a birth certificate, which she in turn blames CYS for not providing more assistance to her in this regard:

> CYS did not utilize reasonable efforts to assist [M]other in locating stable housing or assist her in obtaining the necessary legal documentation to confer citizenship and access to public welfare benefits. If CYS would have assisted [M]other, [M]other could have at least been able to obtain housing so she could reside with her [C]hildren. Instead, CYS did absolutely nothing to help [M]other. They recommended various services knowing that [M]other could never complete them and waited for the termination of parental rights timeframe 15 of the past 22 months in order to terminate [M]other's rights.

Mother's Brief at 10-11.

Mother has cited to no authority in support of this argument, however, and we are not aware of any such authority. Section 6351 of the Juvenile Act requires an agency to provide reasonable efforts aimed at reunifying the parent with his or her children. 42 Pa.C.S.A. § 6351. The trial court

concluded that CYS has provided reasonable services to Mother, including helping her to obtain housing as well as a sample of her DNA to assist in the process of obtaining a birth certificate. Trial Court Opinion, 6/12/2015, at 3, 9-10. We are not aware of any authority that requires CYS, pursuant to section 6351, to do more, including any obligation to provide additional affirmative assistance (rather than to recommend actions she could take) to obtain a birth certificate for her. To the contrary, our Supreme Court recently ruled that agencies like CYS have no obligation to provide services pursuant to section 6351 aimed at reunifying parents with their children prior to petitioning for termination of parental rights. *In re D.C.D.*, 105 A.3d 662, 671 (Pa. 2014).

For her second issue on appeal, Mother claims that the trial court's determination that CYS satisfied the requirements of section 2511(b) was in error, since it was based upon environmental factors beyond her control. Mother's Brief at 14. Mother insists that there is a strong bond between herself and Children, and that the trial court wants to sever that bond based upon her inability to provide adequate housing, furnishings, income, clothing and medical care, which (given her lack of access to welfare benefits) is beyond her control at the moment. *Id.*

Reviewing the certified record on appeal, however, we must disagree, as CYS presented clear and convincing evidence in connection with section 2511(b) that was wholly unrelated to any consideration of environmental

factors. Azure Hixenbaugh, the CYS caseworker, testified that based upon her observations, there was no bond between the Children and their parents (including Mother) that was of benefit to the Children. N.T., 8/6/2014, at 130. Dr. Neil Rosenblum testified that while he believed that Mother loved the Children dearly, *id.* at 57, he saw no similar loving relationship between the Children and their parents. *Id.* at 46-47. Instead, Dr. Rosenblum described the Children as "comfortable" with their parents, with the older child (C.L.) exhibiting more of an attachment than Ch.L. *Id.* at 46. Both Ms. Hixenbaugh and Dr. Rosenblum agreed that severing the relationship between the Children and Mother would not result in any detrimental effect to the Children. *Id.* at 47-48, 130. According to Dr. Rosenblum, the Children have adapted to life with their pre-adoptive foster parents, from whom they derive all of their "nurturing, direction and emotional support," and that as a result termination was not "something that would cause the children any significant adjustment concerns." *Id.* at 47-48. Both Ms. Hixenbaugh and Dr. Rosenblum also agreed that the Children have strong bonds with their pre-adoptive foster parents and that termination of parental rights and adoption were in the Children's best interests. *Id.* at 44, 130; *see In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013) ("Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents.").

The trial court unquestionably found the testimony of Ms. Hixenbaugh and Dr. Rosenblum to be credible, and this Court is bound by those credibility determinations.  ***In the Interests of J.F.M.***, 71 A.3d 989, 992 (Pa. Super. 2013).  Because the trial court's analysis of section 2511(b) was not reliant upon environmental factors beyond the ability of Mother to provide, we find no error.  Mother's second issue on appeal thus lacks any merit.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2015