J-S46002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1020 EDA 2018 |

Appeal from the Order Dated March 2, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000287-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.-E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 1021 EDA 2018 |

Appeal from the Order Entered March 2, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0052638-2010

| | | |
|---|---|---|
| IN THE INTEREST OF: H.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 1022 EDA 2018 |

Appeal from the Order Entered March 2, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000288-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S46002-18

:<br>:<br>:

APPEAL OF: C.F., MOTHER  :

:<br>:<br>:<br>:

:  No. 1023 EDA 2018

Appeal from the Order Entered March 2, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0052639-2010

| | | |
|---|---|---|
| IN THE INTEREST OF: A.Q.M.-Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 1024 EDA 2018 |

Appeal from the Order Entered March 2, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0052640-2010

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A.-Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 1025 EDA 2018 |

Appeal from the Order Entered March 2, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0052641-2010

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 06, 2018**

- 2 -

C.F. ("Mother") appeals from the shelter care orders entered March 2, 2018, committing her six minor children, A.M.-E., born March 2005; S.M., born December 2007; A.Q.M.-Y., born December 2008; A.A.-Y., born December 2009; S.Y., born April 2011; and H.Y., born November 2014, to the care and custody of the Philadelphia County Department of Human Services ("DHS").[1]  We affirm.

We summarize the facts and procedural history as outlined in the juvenile court opinion.  *See* Trial Court Opinion, 4/30/18, at 1-3; *see also* N.T., 3/2/18, at 1-16.  The family has been involved with DHS since 2010. The most recent contact occurred in November 2017, when A.Q.M.-Y. was taken to the Children's Hospital of Philadelphia ("CHOP") and diagnosed with a fractured hand.  Medical staff reported the matter to DHS.  A subsequent general protective services report averred that: 1) the five school-aged children did not attend school; 2) Mother had mental health issues; and 3) Mother was not concerned about the conduct of her children.  The report was substantiated.

On February 15, 2018, the juvenile court adjudicated all six children dependent and ordered DHS to supervise the family, obtain orders for protective custody ("OPC") for the children and place them in appropriate

---

[1] G.Y. ("Father") did not separately appeal the orders, and is not a party to this appeal.

settings.[2]  At that hearing, DHS introduced evidence that S.Y. and H.Y. were delayed in medical care.  It also presented its concerns about Mother's physical and mental health, the existence of domestic violence in the home, and the parents' failure to cooperate with the Community Umbrella Agency ("CUA") Turning Points for Children.  Following the evidentiary hearing, DHS twice attempted to visit the family home, but no one answered the door.

A shelter care hearing was convened on March 2, 2018.  DHS presented the testimony of Malika Pierce, a DHS social worker, and Kaitlin Sullivan, the CUA case manager.  Mother was present and represented by counsel.  The children were represented by a child advocate attorney.  Ms. Pierce testified that she visited the children in their foster placements, they were safe, and their needs were met.  She further noted that Mother did not allow any of the children to be interviewed alone, was hostile when speaking to the children, and that both parents were uncooperative with CUA and refused to sign safety plans and other necessary forms.  At the conclusion of the hearing, the juvenile court entered a shelter care order that re-committed the six children to the care and custody of DHS.  The court referred Mother for drug screens and mental health assessments, and permitted Mother and Father weekly supervised visitations.

_____

[2] Mother did not request the notes of testimony from the February 15, 2018, hearing and they are not contained in the certified record.

On March 28, 2018, Mother contemporaneously filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother presents the following issues for our review:

1. Whether the trial court abused its discretion or committed reversible error when it determined that allowing the children to remain in the home would be contrary to the welfare of the children and that reasonable efforts were made to prevent such placement as required by 42 Pa.C.S. [§§] 6325, 6332, and 6334 and [Pa.R.J.C.P.] 1240, 1242(B)(3) and 1243.

2. Whether the trial court abused its discretion or committed reversible error, when it failed to inquire whether the agency engaged in Family Finding before initially removing the children from the home as required by Act 55 of 2013 (P.L. 169, No. 25) and in failing to make a determination that reasonable efforts were made to place the children together as required by Act 115 of 2010 (P.L. 1140, [No.] 115).

Mother's brief at 5.

Prior to reaching the merits of Mother's appeal, we must first determine whether she has preserved her issues. When filing her initial Rule 1925(a)(2)(i) statement, Mother neglected to raise any issues. Instead, she requested additional time to file a supplemental statement of errors following receipt of the relevant notes of testimony. However, no supplemental statement appears in the certified record. Additionally, Mother did not raise either of her current issues during the shelter care hearings. In explaining its decision to re-commit children to DHS for placement, the juvenile court addressed Mother's first issue *sua sponte* in its Pa.R.A.P. 1925(a) opinion.

However, the juvenile court did not touch upon the substance of the second claim that Mother presents for our review.

Where a parent does not raise her issues at the hearing before the lower court, these issues are waived for purposes of appeal. *See In re B.C.*, 36 A.3d 601, 605 (Pa.Super. 2012); *see also* Pa.R.A.P. 302. Similarly, where a parent does raise her issues in her concise statement of errors complained of on appeal, she cannot raise such claims for the first time on appeal. *Id*.; *see also* Pa.R.A.P. 1925(b)(4)(vii). Accordingly, despite the fact that Mother was represented by counsel during the juvenile court proceedings and when she initiated this appeal, she neglected to preserve any issues for our review. Hence, we are constrained to find that the claims Mother raised for the first time on appeal are waived. Moreover, assuming, *arguendo*, that the issues that Mother asserts herein were raised below and preserved for our review, her claims are meritless.

We review the juvenile court's determinations for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). The Juvenile Act provides for shelter care hearings in the following manner:

> **(a) General rule.--**An informal hearing shall be held promptly by the court or master and not later than 72 hours after the child is placed in detention or shelter care to determine whether his detention or shelter care is required under section 6325 (relating to detention of child), whether to allow the child to remain in the home would be contrary to the welfare of the child and, if the child is alleged to be delinquent, whether probable cause exists that the child has committed a delinquent act. Reasonable notice thereof, either oral or written, stating the time, place, and purpose of the hearing shall be given to the child and if they can be found, to his

parents, guardian, or other custodian. Prior to the commencement of the hearing the court or master shall inform the parties of their right to counsel and to appointed counsel if they are needy persons, and of the right of the child to remain silent with respect to any allegations of delinquency. If the child is alleged to be a dependent child, the court or master shall also determine whether reasonable efforts were made to prevent such placement or, in the case of an emergency placement where services were not offered and could not have prevented the necessity of placement, whether this level of effort was reasonable due to the emergency nature of the situation, safety considerations and circumstances of the family.

42 Pa.C.S. § 6332.

In her first issue, Mother argues that the evidence did not support the trial court's determination that the children should be removed from the home.[3] Mother's brief at 7-8. She notes that she has cared for six children largely on her own, that she was compliant with home visits, and that although the children were afraid of Father, she has since separated from him. *Id*.

The trial court addressed this issue in the following manner:

The CUA case manager testified that there were concerns regarding the mother's physical health and functioning as well as her cognitive functioning. There were also domestic violence concerns in the home (N.T., 3-2-18, p. 5). Furthermore, the five school-aged children were not enrolled in school all year. The mother did not get the two youngest children medical care in a timely fashion. (N.T., 3-2-18, p. 5). Moreover, despite CUA attempts to eliminate the need for the children to be removed from the home, the parents did not cooperate. The parents were

_____

[3] Mother cites no case law in support of her argument. Accordingly, she risks waiver for that reason as well. *See In re Estate of Whitley*, 50 A.3d 203, 209-210 (Pa.Super. 2012) (noting that failure to cite to relevant legal authority constitutes waiver of the claim on appeal); *see also* Pa.R.A.P. 2119(b), Pa.R.A.P. 2101. Although we have already found Mother's claims waived, we note with disapproval counsel's failure to provide this Court with any legal authority to support Mother's position.

actively hiding the children from DHS and CUA (N.T., 3-2-18, pgs. 4 and 11). The parents did not sign safety plans, FERPA's [Family Educational Rights and Privacy Act forms], and single plan objectives. The CUA case manager testified that the mother was medicating the children with over the counter medication to make them sleep during the day (N.T., 3-2-18, p. 10). Lastly[,] the case manager stated that the mother had demonstrated hostility toward the children and has made inappropriate comments to the children (N.T., 3-2-18, pgs. 9-12).

Trial Court Opinion, 4/30/18, at 3-4. The court then concluded that DHS met its burden of showing by clear and convincing evidence that allowing the children to remain in the home would be contrary to their health, welfare, and safety, and that reasonable efforts were made to prevent or eliminate the need for removal of the children from the home. *Id*. As we discern no abuse of discretion in these determinations, we would not disturb the juvenile court's orders on this basis. *In re N.A.*, 1116 A.3d 1144, 1148 (Pa.Super. 2015) ("[W]e will not overrule [the court's] findings if they are supported by competent evidence.").

In her second issue, Mother contends that the juvenile court erred by failing to examine whether DHS engaged in family finding pursuant to Pa.R.J.C.P. 1120 and 1149, and 62 P.S. § 1302.1. Mother's brief at 9. She notes that the children were placed in three separate general foster homes rather than kinship placements, and that it was in the best interest of the children to be placed together in kinship care. *Id*. at 9-10.

The Rules of Juvenile Court Procedure provide that the court shall inquire as to the efforts made by the county agency to comply with the family finding

requirements pursuant to 62 P.S. § 1301 *et seq.* The rules define family finding as:

> the ongoing diligent efforts of the county agency, or its contracted providers, to search for and identify adult relatives and kin, and engage them in the county agency's social service planning and delivery of services, including gaining commitment from relatives and kin to support a child or guardian receiving county agency services.

Pa.R.J.C.P. 1120.

Instantly, the juvenile court found that DHS made reasonable efforts to eliminate the need to remove the children from the home. *See* Shelter Care Order, 3/2/18, at 1. Further, the court, in its adjudication of dependency, ordered the agency to continue to engage in family finding until further order of the court. *See* Order, 2/15/18, at 2. However, Mother neither presented evidence nor made any averment that a family member or relative exists with whom the children could have been placed. Moreover, since Mother and Father were uncooperative or actively hostile when dealing with DHS and CUA, it became necessary for the agency to remove the children from the home immediately in order to preserve their safety and welfare. Hence, we find that the juvenile court acted in the children's best interests in removing them before DHS completed long-term family finding.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/18