J-S89016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF C.A.J.-B.Y., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | |
| APPEAL OF: S.T.J., FATHER | |
| | No. 1818 EDA 2016 |

Appeal from the Order April 28, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000301-2016
CP-51-DP-0001468-2013

BEFORE:  SHOGAN, J., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.:            **FILED JANUARY 10, 2017**

S.T.J. ("Father") appeals from the April 28, 2016 decree terminating his parental rights to C.A.J.-B.Y. ("Child").  Father's counsel has also filed an **Anders**[1] brief and a motion to withdraw from representation on the ground that the appeal is frivolous.  We affirm and grant counsel's motion to withdraw.

On April 12, 2013, when Child was seven months old, the Philadelphia Department of Human Services ("DHS") received a Child Protective Service report stating that Child had been taken to Albert Einstein Medical Center in

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **Anders v. California**, 386 U.S. 738 (1967); **see In re V.E.**, 611 A.2d 1267, 1275 (Pa.Super. 1992) (extending **Anders** principles to appeals involving termination of parental rights).

Philadelphia with a near-fatal stab wound to the back of his head. The wound was 7 centimeters deep and penetrated Child's brain. At the time of the incident, Father and S.K.J. ("Mother") were in the midst of a domestic dispute in Child's presence. At the hospital, the parents reported that Child had accidentally fallen on the knife during their altercation. Child was later transferred to St. Christopher's Hospital for Children and remained hospitalized until July 11, 2013.

On April 13, 2013, Father was arrested and charged with attempted murder, aggravated assault, endangering the welfare of children, possessing an instrument of crime ("PIC"), simple assault, and recklessly endangering another person.[2]

On July 11, 2013, upon Child's release from the hospital, DHS obtained order of protective custody ("OPC") and placed Child in medical foster care. After a shelter-care hearing on July 12, 2013, the trial court lifted the OPC and ordered Child temporarily committed to DHS custody. On July 19, 2013, the trial court adjudicated Child dependent and committed him to the care and custody of DHS. The trial court also issued a stay-away order as to Father.

On June 17, 2015, Father pled guilty to endangering the welfare of a child. On the same day, he proceeded to a jury trial on the charges of

_____

[2] Mother was also arrested as a result of the stabbing incident and, at the time of Father's termination hearing, was incarcerated.

aggravated assault and PIC. However, the trial court declared a mistrial due to a hung jury.[3]

On July 30, 2015, the trial court found aggravating circumstances as to both Father and Mother and found that Child had been a victim of physical abuse resulting in serious bodily injury. At a permanency review hearing on December 17, 2015, the trial court ordered that the stay-away order as to Father remain in place.

On March 29, 2016, DHS filed a petition to involuntarily terminate Father's parental rights and a petition for a goal change to adoption. After a hearing on April 28, 2016, the trial court concluded that DHS proved by clear and convincing evidence that Father's parental rights should be terminated and that it was in Child's best interest to change the goal to adoption as to Father. The trial court, however, deferred changing Father's goal until after Mother's termination hearing.[4]

_____

[3] Father's retrial was scheduled to take place after the date of this appeal, as was his sentencing on the child endangerment conviction. ***See Anders*** Br. at 8.

[4] The trial court stated that although DHS had "met [its] burden by clear and convincing evidence to involuntarily terminate [Father's] parental right[s]," the court could not "change the goal to adoption without hearing testimony regarding [Mother]." N.T., 4/28/16, at 39-40. Mother's termination hearing was scheduled for August 22, 2016, after the date of this appeal. ***See*** Opinion, 7/1/16, at 2 ("1925(a) Op.").

Father timely appealed to this Court on May 25, 2016. On September 1, 2016, Father's counsel filed an **Anders** brief and a motion to withdraw from representation.[5]

When presented with an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw. To comply with **Anders**, appellate counsel must:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or *amicus curiae* brief; and
>
> (3) furnish a copy of the brief to [the] defendant and advise him of his right to retain new counsel, proceed *pro se* or raise any additional points that he [or she] deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa.Super. 2004) (quoting *Commonwealth v. Ferguson*, 761 A.2d 613, 619 (Pa.Super. 2000)).[6] If counsel satisfies these requirements, we will then independently examine the record to determine if the appeal is frivolous. *Id.*

In her motion to withdraw, counsel states that she can no longer effectively represent Father because she and Father disagree about case

_____

[5] Although counsel titled her motion a "motion to vacate counsel," we will refer to it herein as a motion to withdraw.

[6] *See also Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009) (setting forth requirements for contents of **Anders** brief).

strategy. Counsel further states that she thoroughly reviewed the record and concluded that the appeal would be frivolous. In addition, counsel has filed a brief raising all issues that might possibly support an appeal, has furnished Father with a copy of the brief, and has advised Father of his appellate rights and his right to retain counsel or proceed with the appeal *pro se*. Based on our review of the record, we conclude that counsel has complied with **Anders**.

We now must determine whether Father's claims are frivolous. The **Anders** brief raises two issues:

1. Whether the termination of [F]ather's parental rights was supported by "clear and convincing" evidence and whether the court erred by disregarding the "totality of the circumstances" and not taking into account [F]ather's explanation for his failure to perform parental duties[.]

2. Whether it was in [Child's] best interests to be severed from [F]ather and adopted by his current caretakers.

**Anders** Br. at 2.[7]

Our standard of review in termination cases is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental

_____

[7] After our independent review of the record, we do not discern any additional issues for appeal. Thus, we will address only the issues raised in counsel's **Anders** brief.

rights, this Court must accord the hearing judge's decision the same deference that we would give a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*S.M.B.*, 856 A.2d at 1238 (quoting *In re C.S.*, 761 A.2d 1197, 1199 (Pa.Super. 2000)) (internal citations omitted).[8]

The termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. § 2511. The trial court must conduct a bifurcated analysis in which it initially focuses on the conduct of the parent. *In Interest of B.C.*, 36 A.3d 601, 606 (Pa.Super. 2012). The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds for termination in section 2511(a). *Id.* If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must analyze the best

---

[8] The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion standard to termination decisions as follows:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012).

interests of the child under section 2511(b), primarily considering the child's developmental, physical, and emotional needs. *Id.*

First, Father asserts that the trial court erred in failing to consider the "totality of the circumstances," including "[his] pending criminal trial, his incarceration[,] and the stay-away order," before terminating his parental rights. *Anders* Br. at 3. We disagree.

The trial court terminated Father's parental rights under sections 2511(a)(1), (2), (5), (8). However, we need only agree with the trial court's determination as to one subsection of section 2511(a) in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Thus, we will analyze the trial court's decision to terminate under section 2511(a)(2), which provides:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

To terminate parental rights under section 2511(a)(2), DHS must establish: (1) the parent's repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence

- 7 -

necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. **S.P.**, 47 A.3d at 828. A parent's incarceration is relevant to the section 2511(a)(2) analysis and may be dispositive of a parent's ability to provide the "essential parental care, control or subsistence" that the statute contemplates. **Id.** Furthermore, "[t]he cause of [the parent's] incarceration may be particularly relevant to the Section 2511(a) analysis, where imprisonment arises as a direct result of the parent's actions which were 'part of the original reasons for the removal' of the child." **In re Z.P.**, 994 A.2d 1108, 1120 (Pa.Super. 2010) (quoting **In re C.L.G.**, 956 A.2d 999, 1006 (Pa.Super. 2008)).

Here, in its section 2511(a) analysis, the trial court carefully considered Father's present circumstances and the reasons for Child's removal from his custody. The trial court focused not only the fact that Father has been incarcerated for most of Child's life, but also on the fact that Father's incarceration was the direct result of the stabbing incident that seriously injured Child. The trial court found:

> In the instant case, the stay away order was issued due to [Father's] own conduct. Furthermore, [Father] has been incarcerated during the entire time [Child] has been in the care and custody of DHS. [Father's] release date from prison is unknown. He still has an open criminal case regarding the stabbing incident with [Child]. . . . Moreover, the [Community Umbrella Agency] supervisor testified that the conditions which brought this case into the care of DHS have not been remedied.

. . .

- 8 -

> . . . [T]he court found that a domestic violence incident between [Mother] and [F]ather resulted in [Child] incurring a stab wound. The stab wound caused [Child] to suffer permanent disabilities. The evidence presented in this case clearly warrants the involuntary termination.

1925(a) Op. at 4 (internal citations omitted). The trial court, as the factfinder, was required to make all credibility determinations and resolve the conflicts in the evidence. *Z.P.*, 994 A.2d at 1115-16. We find no abuse of discretion.[9]

Next, Father asserts that the trial court erred in concluding that changing the goal to adoption was in Child's best interests.[10] We disagree.

To terminate parental rights, DHS must prove by clear and convincing evidence that termination is in the child's best interests under section 2511(b). "While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is . . . only one of many factors to be considered by the court when determining what is in the

---

[9] Father also argues that at the time of the termination proceeding, he was awaiting retrial on the aggravated assault and PIC charges and, thus, "it was conceivable that he may have been found not guilty of the more serious charges and would have been eligible for release [from prison]." *Anders* Br. at 8. However, the evidence credited by the trial court established that Father's release date was unknown and that he would be unable to care for Child within a reasonable amount of time. N.T., 4/28/16, at 10-11, 13-14.

[10] We recognize that the April 28, 2016 decree from which Father appealed did not formally change Father's goal to adoption. *See supra* n.3. However, the trial court stated on the record at the termination hearing that DHS had satisfied its burden of proof under section 2511(b), N.T., 4/28/16, at 40, and also concluded in its opinion that adoption was in Child's best interests, 1925(a) Op. at 5-6. Therefore, we will address Father's claim.

best interest of the child." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011). The trial court must also consider the child's safety needs and "intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." ***Id.*** (quoting ***In re A.S.***, 11 A.3d 473, 483 (Pa.Super. 2010)). Moreover, the trial court must consider "whether any existing parent-child bond can be severed without detrimental effects on the child." ***Id.***

> With regard to section 2511(b), the trial court found:

> [T]he testimony established that [Child] would not suffer any irreparable harm if [Father's] rights were terminated. There is no evidence that a bond exists between [Father] and [Child]. The bond was never able to develop because there was a stay away order issued against [Father] when [Child] was less than eight months old. . . . [F]ather has been convicted of endangering the welfare of his child. The child sustained stab wounds to the head resulting in major ongoing medical needs. The child is placed in a medical foster home. The testimony indicated that it would be in the best interest of [Child] to change the goal to adoption.

1925(a) Op. at 5-6 (internal citations omitted). The record supports the trial court's findings. Therefore, we conclude that DHS established, by clear and convincing evidence, that termination of Father's parental rights was in Child's best interests.

Decree affirmed. Counsel's petition to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/10/2017