J-S30016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.T.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.J.L., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 525 MDA 2024 |

Appeal from the Decree Entered March 15, 2024
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 88678

BEFORE: PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: SEPTEMBER 11, 2024**

R.J.L. ("Father") appeals from the decree involuntarily terminating his parental rights to his daughter, R.T.L. ("Child"). Additionally, counsel for Father, Mary C. Favinger, Esquire ("Counsel"), has filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and petitioned to withdraw. We grant Counsel's petition to withdraw and affirm the decree involuntarily terminating Father's parental rights.[1]

The relevant factual and procedural history is as follows.

Child was born in October 2021, two days after L.C. ("Mother") was found slumped over in a stolen vehicle with a needle in her arm. **See** N.T.,

---

[*] Former Justice specially assigned to the Superior Court.

[1] Mother absconded from a drug treatment facility in December 2023, and her whereabouts were unknown at the time of the termination hearing. **See** N.T., 3/4/24, at 11-12.

3/4/24, at 8-9.  Both Mother and Child tested positive for cocaine and opioids.  *See* Trial Court Opinion, 5/6/24, at 2.  In November 2021, Berks County Children and Youth Services ("BCCYS") filed a petition for dependency asserting Child was without proper care or control, and, in November 2021, the court adjudicated Child dependent and transferred legal custody to BCCYS.  *See* N.T., 3/4/24, at 9.  Child was placed with kinship foster parents, with whom she has lived since birth and whose children she regards as siblings.  *See id*. at 26.  Mother and Father were ordered to complete parenting education, have mental health, drug, and alcohol evaluations, and establish appropriate housing and income; they were granted supervised visitation.  *See id*.  Father denied parentage of Child until paternity tests were completed in April 2022.  *See id*. at 10-11.

The court held permanency reviews for Mother and Father in May 2022, November 2022, March 2023, and August 2023.  In May 2022, the court found Father had not made progress toward alleviating the circumstances that led to the placement nor had he complied with the permanency plan; in November 2022, the court found Father had made minimal progress toward alleviating the circumstances that led to placement and was minimally compliant with the permanency plan; in March 2023, the court found Father had made minimal progress toward alleviating the circumstances that led to placement and was minimally compliant with the permanency plan, and in August 2023, the court found Father had made no progress toward alleviating the circumstances that

led to placement and was minimally complaint with the permanency plan. ***See*** Trial Court Opinion, 5/6/24, at 3.

BCCYS filed involuntary termination petitions against Father and Mother in August 2023. ***See*** N.T., 3/4/24, at 25.

In January 2024, the court convened a hearing on BCCYS's petitions. ***See*** N.T., 1/22/24, at 1.[2] Limarys Alvarez ("Ms. Alvarez"), an outpatient specialist therapist at Commonwealth Clinical Group ("CCG"), testified CCG evaluated Father in August 2022, focusing on his unhealthy relationships with Mother and Child and related domestic violence issues, including a report he pushed Mother down the stairs during her pregnancy. ***See id***. at 15-16, 42. In April 2023, Father began sessions with a CCG therapist and then after missing sessions, began sessions with Ms. Alvarez at the end of July 2023. ***See id***. at 17. From July 2023 until January 2024, Ms. Alvarez had nine sessions with Father; Father missed six other sessions. ***See id***. at 17. Although the sessions were designed to address Father's history of domestic violence, Father denied that history and any need for mental health services, alleging healthy relationships and domestic violence concerns did not apply to

---

[2] Pursuant to ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1236 (Pa. 2020), we must verify the court appointed counsel to represent Child, and if counsel served in a dual role, that the court determined before appointment that there was no conflict between the child's best and legal interests. For children too young to express a preference, there is no conflict between the child's legal and best interests, and the child's right to counsel is satisfied by the appointment of an attorney-guardian *ad litem* ("GAL"). ***See In re T.S.,*** 192 A.3d 1080, 1092-93 (Pa. 2018). Here, because Child was less than three years old at the time of the proceeding, the GAL did not have a conflict in representation. GAL has filed a brief in support of termination.

him.  *See id*. at 18-19.  Father refused to focus on healthy relationships and focused only on obtaining custody of Child, which prevented progress on his domestic violence issues.  *See id*. at 19-20, 23, 29-31, 34, 37-41.  Ms. Alvarez testified Father always provided only "very limited" information about his current life.  *See id*. at 20.

Kristen Murphy ("Ms. Murphy"), a caseworker at Signature Family Services, began working with Father in March 2023[3] on parenting skills after testing showed he presented a medium-to-high risk in all five parent-related categories.  *See id*. at 54.  Father attended the first session, then missed the next four and the program discharged him in May 2023.  *See id*. at 51-54.  Ms. Murphy was also present during sixteen on-line visits Father had with Child.  *See id*. at 55-56.  During those sessions, Father became impatient and frustrated when Child, who was less than two years old, lost focus.  *See id*. at 57-58.  Father failed to appear for a first in-person visit in July 2023, and thereafter continued to cancel or not show up regularly to scheduled visits. *See id*. at 59-60.

In August 2023, a supervisor attended Father's in-person meeting with Child and Ms. Murphy because Father had been argumentative and used inappropriate language with Ms. Murphy.  *See id*. at 61, 69.  Child was upset and crying and would not engage with Father; Father had failed to bring a diaper bag or any other necessary supplies.  *See id*. at 61-62.  Father

_____

[3] Until August 2023, Father lived in Florida with his two other children.  *See* N.T., 3/4/24, at 16-18.

attended one in-person visit later that month, but thereafter cancelled his visits or did not appear later in August, in September, or in early October, at which point he was discharged from the casework and nurturing parenting program. *See id*. at 62-64. The hearing was continued after Ms. Murphy's testimony.

The court resumed the hearing in March 2024. Saniya Daryanani ("Ms. Daryanani"), Child's BCCYS adoption caseworker since September 2022, testified in-person visits for Father were not scheduled until he stated he moved to Pennsylvania in August 2023. *See* N.T., 3/4/24, at 6-7, 20-22. Instead of visiting Child weekly, Father visited monthly, and told BCCYS he would tell them when he wanted visitation as opposed to having a schedule. *See id*. at 23. In January 2024, Father declined visits that were offered to him on three consecutive weeks. *See id*. at 44. During an in-person visit in August 2023, Father grabbed Child out of foster father's arms, greatly upsetting Child. *See id*. at 44. Ms. Daryanani testified Father was ordered in November 2022 to complete parenting education and mental health and domestic violence treatment. *See id*. at 24. Ms. Daryanani testified Father is standoffish during casework and is frustrated with her during visits with Child. *See id*. at 41-42. Ms. Daryanani testified Child is very attached to foster parents and turns to them for all her needs, including her hospital appointments for a highly communicable disease, a recent surgery for removal of her adenoids, and monitoring for signs of autism. *See id*. at 27. Ms. Daryanani testified Child sees foster parents' home as hers and treats their

children as her siblings. *See id*. at 26-27. Ms. Daryanani does not see a detriment to Child arising from terminating Father's parental rights. *See id*. at 28.

Father testified he is waiting for a home and has a school Child can attend. *See id*. at 51. He produced a lease for a house in Blair County, three to four hours away, that he said was his, and for which he paid $25 monthly. *See id*. at 55-56. He testified his house's distance from Berks County made his attendance at visits more difficult but he did not like Berks County and was familiar with Blair County. *See id*. at 58, 68. He asserted he had been working on domestic violence issues until his insurance lapsed. *See id*. at 63. He testified he receives $300 in SNAP support per month, which is sufficient to support himself, his two sons, and Child. *See id*. at 66-67. Father said he is unaware whether the health clinic in Blair County that treats his two sons could treat Child's specialized needs, which include hepatitis and sickle cell anemia, for which she has been receiving treatment at Children's Hospital of Philadelphia. *See id*. at 69, 74. He testified he has a felony criminal conviction for "pushing" Mother. *See id*. at 76.

In March 2024, the court issued a final decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Father appealed and he and the court complied with Pa.R.A.P. 1925. Thereafter, Counsel filed a petition to withdraw, and an *Anders* brief.

When counsel files an *Anders* brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw.

*See In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending *Anders* principles to appeals involving the termination of parental rights); *see also In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (providing counsel appointed to represent an indigent parent on appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an *Anders* brief).

To withdraw, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

We review Counsel's *Anders* brief for compliance with the requirements set forth in *Santiago*, 978 A.3d at 361. Under *Santiago*, counsel must

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id*. "Once counsel has satisfied the [*Anders*] requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Edwards*, 906 A.2d 1225, 1228 (Pa. Super. 2006) (citation omitted).

Counsel's petition to withdraw certifies her conscientious review of the record and determination that Father's appeal is frivolous. Likewise, Counsel has also filed an *Anders* brief that substantially complies with the requirements set forth in *Santiago*. Counsel's *Anders* brief includes a summary of the procedural history and facts of the case, the issues raised by Father that arguably support the appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Finally, Counsel attached to her petition a letter she sent to Father informing him of his rights. *See Cartrette*, 83 A.3d at 1032; *Millisock*, 873 A.2d at 752.[4] Accordingly, Counsel complied with the requirements of *Anders* and *Santiago*. We therefore conduct our independent review to determine whether Father's appeal is wholly frivolous.

Counsel's *Anders* brief identifies the following issues for our review:

1. Did the trial court err by terminating [Father's] parental rights based on the grounds for involuntary termination set forth [in the] Pennsylvania Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) because [BCCYS] did not establish by clear

---

[4] Father has not responded to counsel's *Anders* brief.

- 8 -

and convincing evidence that [Father's] parental rights should be terminated?

2. Did the trial court err by terminating [Father's] parental rights based on the grounds for involuntary termination set forth [in the Pennsylvania Adoption Act, ] 23 Pa.C.S.A. § 2511(a)(5), and (8), by failing to consider that Father was not the removal source, [and] Father's presentation of evidence that he has been remedying and continuing to remedy conditions leading to [Child's] placement and he had a bond with [Child]?

**Anders** Brief at 6 (capitalization and spacing standardized).

We review involuntary termination orders for an abuse of discretion, which requires an error of law or a showing of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **See In re Adoption of L.A.K.**, 265 A.3d 580, 591 (Pa. 2021) (citation omitted). In applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. **Interest of S.K.L.R.**, 256 A.3d 1108, 1123 (Pa. 2021); **see also In re Adoption of C.M.**, 255 A.3d 343, 358 (Pa. 2021).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. **See** 23 Pa.C.S.A. §§ 2101-2938. Subsection 2511(a) provides grounds for involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). **Id**. § 2511(b). This Court need only agree with one of the grounds set

forth in subsection (a) to affirm, provided subsection (b) is also satisfied. *See*

*In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

In this case, the trial court terminated Father's parental rights pursuant to section 2511(a)(1), (2), (5), (8), and (b). As we need only agree with the trial court's determination as to any one section of 2511(a), we limit our discussion to sections 2511(a)(5) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> * * * * *

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions with a reasonable period of time, the services or assistance reasonably available to the parent are not like to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

> * * * * *

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(5), (b).

To satisfy the requirements of Section 2511(a)(5), BCCYS was required to provide clear and convincing evidence that: (1) Child had been removed from Father's care for at least six months; (2) the conditions that led to removal continued to exist; (3) Father could not or would not remedy those conditions within a reasonable period of time; (4) the services reasonably available to Father were unlikely to remedy the conditions which led to removal within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. **See In re B.C.**, 36 A.3d 601, 607 (Pa. Super. 2012).

In determining the evidence satisfied section 2511(a)(5), the trial court "fully credit[ed]" the testimony of the three BCCYS witnesses which showed: 1) Child had been removed from Father's care for more than six months (and had never been in Father's care), 2) although Father appears to care for Child, "given numerous opportunities, [he] has not shown that he has the ability – or desire – to remedy the conditions which led to the removal of Child," **id**. at 10, 3) "Father ha[d] returned to Pennsylvania to be close to [Child] but relocated to an area several hours from Child . . . [and] missed a number of sessions and visits with [Child] because he did not have adequate means of transportation," **id**., 4) Father chose to live in Blair County because he enjoyed living there but "[Child] is currently receiving medical treatment in Philadelphia and Father felt that he could change providers to have someone

treat [Child] closer to his current home. [That] is unrealistic and would be disruptive to the medical care Child is already receiving," *id*., and 5) termination was in Child's best interests, *see id*.

Following our review, we discern no abuse of discretion by the trial court in finding grounds for termination pursuant to section 2511(a)(5). The record clearly indicates Child had never been in Father's custody and first saw him when she was eighteen months old. Father chose to live hours away from Child, limiting his ability to visit her, and Father in fact told BCCYS that visits would be at his discretion, not theirs. Further, the conditions that led to removal continue to exist, due to Father's minimal compliance with his goals and discharge from various programs for non-attendance. Additionally, Father was unwilling to remedy the conditions that led to removal, including his refusal to acknowledge his need for domestic violence treatment, which restricted any possible progress. It was unlikely the services available to Father would remedy the conditions that led to removal – Father admitted he had not even ascertained whether Blair County's health clinic would be able to treat Child's serious health needs, including hepatitis, sickle cell anemia, and possible autism. Finally, termination is in Child's best interests, given foster parents' attentiveness to Child's needs and Child's relatively weak bond to Father. Accordingly, Father's claim is frivolous. *In re Adoption of C.M.*, 255 A.3d at 358; *Interest of S.K.L.R.*, 256 A.3d at 1123; *In re B.C.*, 36 A.3d at 607.

We next address section 2511(b). Where the grounds for termination under section 2511(a) are met, the trial court shall then give primary consideration to the developmental, physical, and emotional needs and welfare of the child under section 2511(b). *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The emotional needs and welfare of the child have been interpreted to include intangibles such as love, comfort, security, and stability. *Id*. The determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. *Id.* The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond. *Id*.

The evaluation of a child's parental bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (internal citation omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Moreover, a parent's emotional bond with his child, while a major component of the section 2511(b) analysis, is nevertheless only one

of many factors to be considered by the court when determining what is in the best interest of the child:

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent [as well as the] continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (internal citations omitted).

In determining termination of Father's parental rights under section 2511(b), the trial court concluded that whatever bond Father had with Child, it was outweighed by Child's bond with foster parents:

> [T]he evidence shows that while Father loves [Child], that is not enough to overcome other evidence presented in this case. What is in the best interest of this Child is outweighed by what little evidence was presented regarding the bond between Father and Child. Moreover, this court finds that the evidence clearly establishes that [Child] is well-bonded with foster parents and that [Child's] interests are best served by terminating Father's parental rights and opening [Child] up for adoption.

Trial Court Opinion, 5/6/24, at 11 (capitalization standardized).

Upon review, we discern no abuse of discretion in the trial court's finding Child's needs and welfare favor termination of parental rights pursuant to section 2511(b). Ms. Daryanani testified Child is very attached to foster parents, turns to them for all her needs, sees their home as her home, and foster parents attend to her specialized medical needs and will be able to continue to do so. *See* N.T., 3/4/24, at 26-27. Ms. Daryanani opined Child would not suffer any detriment if the court terminated Father's parental rights.

*See id*. at 28.  The record, accordingly, supports the trial court's finding under section 2511(b) that termination would serve Child's best interests.

Following our independent review and based on our conclusion that trial court properly terminated Father's parental rights under section 2511(a)(5) and (b), we agree with Counsel that the appeal from the decree terminating Father's parental rights is wholly frivolous.

Decree affirmed.  Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/11/2024