J-A04011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.A.C.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: Z.A.C.S., A MINOR | : | |
| | : | No. 1463 MDA 2024 |

Appeal from the Decree Entered September 7, 2024
In the Court of Common Pleas of York County Orphans' Court at No(s):
2024-0069a

BEFORE:  LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: JUNE 10, 2025**

Z.A.C.S., a minor, (Child) (born June 2014) appeals from the final decree,[1] entered in the Court of Common Pleas of York County, Orphans' Court Division, terminating the parental rights of Child's mother, L.M. (Mother), after a hearing before the Honorable N. Christopher Menges.[2]  After careful review, we affirm based on Judge Menges' opinion.

---

[1] Laura L. Smith, Esquire, represented Child at the termination hearing and represents Child on appeal.  Daniel D. Morley, Esquire, was appointed guardian *ad litem* for Child (and her siblings) at the termination hearing.  **See** 23 Pa.C.S.A. § 2313(a); **see also Matter of Adoption of A.C.M.**,  333 A.3d 704 (Pa. Super. 2025).

[2] Mother's parental rights to three other children were also involuntarily terminated by Judge Menges.  R.R.S., Child's father, is not the father of Mother's other three other children.  Mother's appeals in those cases, and her appeal with respect to Child, are docketed at 1465 MDA 2024, 1466 MDA 2024, 1467 MDA 2024, and 1468 MDA 2024.  Mother's cases were consolidated below, and the trial court's opinion in the instant case, Child's
*(Footnote Continued Next Page)*

York County Office of Children, Youth, and Families (CYF) became involved with this family in 2017 as a result of allegations of Child's truancy,[3] Mother's lack of housing and supervision, and Mother's substance abuse and mental health issues. In January 2022, CYF filed a dependency petition, which was later withdrawn.

In January 2023, CYF received a new referral regarding allegations of abandonment. Child, along with two younger siblings, was found in a motel room without Mother; the referral also alleged that there was "marijuana, crack, and a scale" observed in the room with the children. *See* N.T. TPR Hearing, *supra* at 2, Ex. 1. Mother was later located at the back of the motel. Mother was arrested, was charged with endangering the welfare of children, and faced additional drug charges.

At the time of her arrest, Mother had fifteen outstanding warrants. Mother is currently out on bail, continues to reside at the Red Roof Inn in York City, and reports that she is employed at OSM Worldwide and works Monday through Friday, 8 hours each day.

At a shelter care hearing, the godmother of one of Mother's children offered to be a resource for all three children.[4]

_____

appeal, is an incorporated opinion with respect to Mother's consolidated cases and addresses Child's issues in this appeal.

[3] An initial family service plan (FSP) noted Child had 79 absences and was 46 days truant. *See* N.T. Involuntary Termination of Parental Rights (TPR) Hearing, 7/19/24, at 2, Ex.1.

[4] At this time, Mother's fourth child had not yet been born.

CYF recommended Child's physical and legal custody remain with the agency for placement with this individual as emergency kinship caregiver. All parties agreed to this arrangement.

On January 18, 2023, Child was adjudicated dependent.[5] The initial goal was return to parent or guardian. Four family service plans (FSP) were prepared for the family—on July 13, 2021, January 26, 2023, July 24, 2023, and January 5, 2024. *See* N.T., TPR Hearing, *supra* at 13-14. Mother's goals were as follows: maintain safe, stable housing for Child; maintain employment, complete drug and alcohol evaluations and testing and follow through with recommendations; cooperate with in-home team and early intervention; and complete a mental health evaluation.

In a June 21, 2023 permanency review order, the court found no compliance by Mother. In a December 7, 2023 permanency review order, the court found Mother had minimally complied with the permanency plan. On March 6, 2024, following a status review, the court confirmed its prior adjudication of dependency and changed the placement goal to adoption. *See id.* at 97.

On April 29, 2024, CYF filed a petition for involuntary termination of parental rights with respect to Child. The court directed counsel enter into a

_____

[5] CYF's petition incorrectly avers Child was adjudicated dependent on November 18, 2023. *See* Petition for Involuntary Termination of Parental Rights, 4/29/24, at 4. Child's two younger siblings were also adjudicated dependent. As noted above, Mother's youngest child, her fourth, had not been born. *See* n.4, *supra*.

Stipulation of Counsel;[6] after counsel complied with the court's order, the court held a termination hearing on July 19, 2024 and September 6, 2024.[7] At the hearing, the court heard testimony from the following: Abbie Fulton, Catholic Charities; Ellie Williams, executive director and lead mental health therapist at EquiTeam Support Services; Susan Scott, program director at PA Child Support Services; and Tanner Swarr, CYF caseworker.

At the time of the hearing, Child had been in placement for 20 months, Mother had been incarcerated on and off throughout the case, and Mother had not completed her court-ordered permanency plan goals.

Following the hearing, the court entered a decree terminating Mother's parental rights. *See* Final Decree, 9/6/24. Child filed a timely appeal. Both Child and the trial court complied with Pa.R.A.P. 1925. Child raises the following issues on appeal:

1. Whether the trial court abused its discretion in finding that CYF had proved by clear and convincing evidence that the parental rights of [Mother] should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1)?

2. Whether the trial court abused its discretion in finding that CYF had proved by clear and convincing evidence that the parental rights of [Mother] should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the trial court abused its discretion in finding that CYF had proved by clear and convincing evidence that the

---

[6] The Stipulation of Counsel was filed on July 15, 2024 and admitted into the record. *See* N.T., TPR Hearing, *supra* at 15.

[7] At the time of the hearing, Mother was incarcerated at York County Prison for 60 days for driving while under suspension.

- 4 -

parental rights of [Mother] should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(5)?

4. Whether the trial court abused its discretion in finding that CYF had proved by clear and convincing evidence that the parental rights of [Mother] should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(8)?

5. Whether the trial court abused its discretion in finding that CYF had proved by clear and convincing evidence that the parental rights of [Mother] should be terminated pursuant to 23 Pa.C.S.A. § 2511(b)?

Appellant's Brief, at i-ii.

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S.A. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S.A. § 2511(b)).

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560,

563 (Pa. Super. 2003).  Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

After a careful review of the record, the briefs on appeal, and the relevant case law, we agree with the trial court that CYF presented clear and convincing evidence to terminate Mother's parental rights under sections 2511(a) and (b) and, therefore, we find no abuse of discretion.  **A.R.**, *supra*, We rely upon Judge Menges' considered opinion to affirm the order terminating Mother's parental rights.  *See* Trial Court Opinion, 11/6/24, at 14-28 (termination proper under section 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) where court found CYF offered clear and convincing evidence that: Mother failed to perform parental duties and was unable to remedy conditions leading to Child's placement; Mother has caused Child to be without essential parental care and the conditions and causes of neglect will not be remedied; Child has been removed from Mother's care for more than six months and, it is "not clear that Mother will be able to remedy these conditions in a reasonable time." *id.* at 19; Child has been removed from Mother's care for at least twelve months and the conditions that led to removal continue to exist and termination best serves Child's needs and welfare; termination would best Child's developmental, physical, and emotional needs and welfare as Child has "a wonderful and healthy relationship" with kinship placement and pre-adoptive resource has been identified; and, even though Child has bond with Mother, maintaining that bond does not serve Child's needs and Child is thriving in placement.).

We instruct the parties to attach a copy of Judge Menges' opinion in the event of further proceedings in the matter.

Decree affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/10/2025

Filed 12/5/2024 3:32:00 PM Superior Court Middle District
1463 MDA 2024

APPENDIX C

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA**
**ORPHAN'S COURT DIVISION**

| | | |
|---|---|---|
| **IN THE INTEREST OF:** | : | **No.: 2024-0069** |
| **Z.A.C.S., A MINOR** | : | |
| | : | |
| | : | |
| **APPEAL OF: L.S.M., MOTHER** | : | **1465 MDA 2024** |
| | : | |
| **IN THE INTEREST OF:** | : | **No.: 2024-0071** |
| **Y.A.M., A MINOR** | : | |
| | : | |
| | : | |
| **APPEAL OF: L.S.M., MOTHER** | : | **1467 MDA 2024** |
| | : | |

---

## MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a)(2)(ii) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

**AND NOW,** this 6th day of November, 2024, the court is in receipt of Minor Children's Notice of Appeal and Concise Statement of Errors Complained of Pursuant to Rule of Appellate Procedure 1925(a) filed on October 7, 2024. The court hereby reaffirms its order entered on September 6, 2024, after a hearing to involuntarily terminate parental rights before The Honorable N. Christopher Menges. The court determined it was in Children's best interest to involuntarily terminate parental rights of Mother and the three Fathers.[1]

---

[1] Fathers are incarcerated and did not appeal the termination of parental rights.

1

The court denies Minor Children's assertion that the court erred in its decision to terminate parental rights on the basis that there was insufficient evidence presented by York County Office of Children, Youth and Families to meet its burden of proof. The court understands that Children love Mother and want to be with her. However, the court believes termination of parental rights to be in Children's best interests at this time. Because the court has responded to Mother's appeals regarding all four children, the court incorporates and attaches its amended opinion in that matter.

BY THE COURT,

_____
N. CHRISTOPHER MENGES, JUDGE

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA**
**ORPHAN'S COURT DIVISION**

| | | |
|---|---|---|
| **IN THE INTEREST OF:** | : | **No.: 2024-0069** |
| **Z.A.C.S., A MINOR** | : | |
| | : | |
| | : | |
| **APPEAL OF: L.S.M., MOTHER** | : | **1465 MDA 2024** |
| | | |
| **IN THE INTEREST OF:** | : | **No.: 2024-0070** |
| **S.A.J., A MINOR** | : | |
| | : | |
| | : | |
| **APPEAL OF: L.S.M., MOTHER** | : | **1466 MDA 2024** |
| | | |
| **IN THE INTEREST OF:** | : | **No.: 2024-0071** |
| **Y.A.M., A MINOR** | : | |
| | : | |
| | : | |
| **APPEAL OF: L.S.M., MOTHER** | : | **1467 MDA 2024** |
| | | |
| **IN THE INTEREST OF:** | : | **No.: 2024-0072** |
| **P.O.J., A MINOR** | : | |
| | : | **TPR** |
| | : | |
| **APPEAL OF: L.S.M., MOTHER** | : | **1468 MDA 2024** |

---

## AMENDED MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a)(2)(ii) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

**AND NOW**, this 6th day of November, 2024, the court is in receipt of Mother's Notice of Appeal and Concise Statement of Errors Complained of Pursuant to Rule of Appellate Procedure 1925(a) filed on October 4, 2024. The court hereby

1

reaffirms its order entered on September 6, 2024, after a hearing to involuntarily terminate parental rights before The Honorable N. Christopher Menges. The court determined it was in Children's best interest to involuntarily terminate parental rights of Mother and the three Fathers.[1]

## FACTS AND PROCEDURAL HISTORY

This appeal involves Mother's four children: ten-year-old Z.A.C.S., whose father is R.R.S; seven-year-old Y.A.M., whose father is J.W., Jr. and; two-year-old P.O.J. and eleven month old S.A.J., whose father is D.J.J. Parties stipulate that Mother has been involved with the York County Office of Children, Youth and Families ("the Agency" or "CYF") since 2017 due to concerns regarding allegations of Z.A.C.S.'s truancy, Mother's lack of housing and supervision, and Mother's substance abuse and mental health issues. Stip. (Y.A.M.), 07/15/2024, at ¶ 7. Regarding Z.A.C.S.'s truancy, an initial family service plan from July 2021 noted that Child had seventy-nine absences and was forty-six days truant. Termination (TPR) Hr'g, 7/19/2024, Ex. 1, at 2. Claims were noted as valid due to Mother not having stable housing and internet issues. *Id.* It was noted that "Mother has resided with a friend, Days Inn, Bell Shelter, and back to Days Inn throughout the assessment." *Id.* The case was accepted for services. In January 2022, a dependency

---

[1] Fathers are incarcerated and did not appeal the termination of parental rights.

petition was filed regarding Z.A.C.S., but the petition was withdrawn the following month without prejudice and court supervision ended. *Id.*

The relevant history began with a new referral to the Agency on January 3, 2023, regarding allegations of Mother's abandonment of the three oldest children.[2] *Id.* The three oldest children were found in the Red Roof Inn without Mother being present and with no supplies. *Id.* Allegations were that "there was marijuana, crack, and a scale observed in the hotel room with the children." *Id.* Mother was found at the back of the hotel, and she could not provide an explanation for why the illegal substances and paraphernalia were in her motel room. Stip. (Y.A.M.), ¶ 11. Mother was arrested and charged with Endangering the Welfare of Children and it was reported that Mother had fifteen outstanding warrants at the time. *Id.* Mother also faced charges of Possession with Intent to Deliver, Drug Paraphernalia, and Small Amount of Marijuana for Personal Use. The Agency had received seven referrals regarding Mother for substance abuse. *Id.,* ¶ 11.

The Agency filed an application for emergency protective custody, which was granted on January 3, 2023. Subsequently, the three oldest children were adjudicated dependent on January 18, 2023. Parties stipulate that at the time of adjudication, Z.A.C.S's attendance record showed: "27 unlawful absences, 21 tardies, 5 excused and 16 unlawful [absences], [and] 2 days early dismissal." Stip. (Z.A.C.S.), ¶ 14.

---

[2] Youngest child, S.A.J., had not been born yet.

The court set the current permanency goal as return to parent or guardian and the concurrent goal as adoption.

Regarding youngest Child, S.A.J., the Agency received a general protective services referral for him because, after his birth on November 30, 2023, Mother left the hospital with Child against medical advice on December 3, 2023. Child had a slightly raised bilirubin level which could require treatment for jaundice if it continued to rise. Stip. (S.A.J.), 7/15/2024, ¶ 10. Mother tested positive for marijuana two days prior to S.A.J.'s birth. *Id.* Child was removed from Mother's care on December 5, 2023, two days after leaving the hospital, and was later adjudicated dependent on December 18, 2023.

Mother was provided with services pursuant to reunification but after twenty months of adjudication for the oldest three children and four months for the youngest child, return to Mother is still not imminent and amended petitions to terminate parental rights were filed on May 6, 2024 for the oldest three children. A petition to terminate Mother's rights to the youngest child's was filed on April 29, 2024. A termination of parental rights hearing was held on July 19, 2024 and September 6, 2024.

At the first day of the termination hearing, Abbie Fulton of Catholic Charities testified that the organization had opened services on January 18, 2023 and closed services unsuccessfully on April 10, 2023. There were no concerns with supervised

4

visits at that time, but Mother's progress was minimal due to such a short period of time.

Next, Ellie Williams of EquiTeam Support Services testified that the two oldest children, Z.A.C.S. and Y.A.M. are both receiving weekly therapy. Ms. Williams testified that she is working with the girls on behaviors, boundaries, developmental trauma, and initially on parentification with Z.A.C.S. Tr., 7/19/2024, at 34. Ms. Williams testified that Z.A.C.S. has improve significantly in relation to be parentified, and she has a healthier relationship with her sister Y.A.M. *Id.* Ms. Williams testified that the girls, the two oldest children, love their mother and want to live with her, and if they cannot live with her, they want to live with Margie Morris, their kinship resource. Ms. Williams had not seen the girls interact with Mother enough to testify regarding any bond the children may have with her. *Id.*, at 40. However, she was able to testify that that girls were bonded to their kinship resource parent.

Susan Scott Program Director of PA Child also testified that they opened services with Mother the first time on November 13, 2023 and closed on March 7, 2024 due learning of Mother's upcoming incarceration. During those months of service, Mother's fully supervised visits were two days per week for two hours. Ms. Scott also testified regarding the parentified behaviors of Y.A.M. and to a greater extent, Z.A.C.S., who behaves more in a role of tending her younger siblings, rather

5

than just playing with them. Tr., 7/19/2024, at 55-57. Ms. Scott testified that Z.A.C.S. often picked up the baby, P.O.J., and once tripped and fell while holding him, raising safety concerns. *Id.*, at 55. The parentified behaviors were observed in Mother's presence. For example, Ms. Scott testified that, during one visit, Y.A.M began screaming from the bathroom, and staff ran to see what was going on. *Id.*, at 57. However, Mother told Z.A.C.S. to go check on Y.A.M. *Id.* Staff had to redirect Mother and explain that she needed to come to the bathroom. *Id.*

Ms. Scott testified that Mother had on-going attendance concerns, such as missed visits for various reasons and was placed on a confirmation policy requiring her to confirm her attendance on the day of each visit. Tr., 9/6/2024, at 58. During the first time PA Child was providing services, Mother brought Christmas gifts for the children and brought clothing, shoes, and toys. *Id.*, at 74-75. Mother did not bring meals or supplies, such as diapers.

After Mother's second incarceration, PA Child opened services a second time on July 1, 2024, approximately two months after the filing of the termination petitions. *Id.*, at 59. Since opening for the second time, Ms. Scott testified that Mother's visits were decreased to once per week for one hour. There had only been three visits by the second day of the termination hearing and Mother had attended each. *Id.* Ms. Scott testified that Mother continued to bring snack foods and drinks for the children rather than a meal and supplies, such as diapers. However, Ms. Scott

was not sure if Mother had ever been told that this was expected of her. *Id.*, at 72-73. Ms. Scott testified that she still could not recommend going to unsupervised visits or expanded visits because of the adjustment period needed for the children. *Id.*, at 64. Ms. Scott noted that the biggest concern at this point is making sure that the two girls are not stepping into parental roles with their younger brothers. *Id.*, at 80.

Next, Tanner Swarr, caseworker for the Agency testified. Ms. Swarr has been assigned to Mother's case since the referral in January 2023. Ms. Tanner testified that Mother is on supervised bail for her pending charges. Tr., 7/19/2024, at 86. She testified regarding the sporadic visitation that has occurred over the course of the reunification period, noting Mother's many changes of address, incarcerations, and time on the run in Florida.

BY ATTORNEY MILLER
Q. As it relates to the mother, since the adjudication of dependency, what addresses do we have as it relates for her?

A. January 4th of 2023, Red Roof Inn. March 26th of 2023, 660 West Princess Street, Unit 1, York, Pennsylvania 17401. May 16th of 2023 reported to be out of state at an unknown location. June 7th of 2023 reported during a visit to her children she was in Miami. Then on June 16th of 2023 she was at 3400 Concord Road, York, Pennsylvania 17404.

THE COURT: That was at York County Prison?

THE WITNESS: It is.

THE COURT: Okay. Go ahead.

THE WITNESS: August 19th of 2023, 921

7

North Pine Street, York, Pennsylvania 17403.
December 5th of 2023, 415 South Court Avenue, York, PA
17401. On March 6th of 2024 at York County Prison. We
were informed when she was released from prison and that
she is staying at the Red Roof Inn currently.

*Id.*, at 88, 89.

Ms. Swarr testified that sporadic visits were sometimes because of active warrants and Mother's fear of being picked up, even though the Agency indicated to Mother that it does not typically notify sheriffs about warrants except in the case of a high crime. *Id.*, at 93. Since the adjudications of dependency, Mother never progressed to unsupervised or partially unsupervised visitation. *Id.*, at 92-93; Tr., 9/6/2024, at 55.

The Agency requested that Mother maintain safe, stable housing for Children; maintain employment; complete a drug and alcohol evaluation and drug and alcohol testing to eliminate substance abuse concerns; follow through with any recommendations; cooperate with an in-home team and early intervention; and have a mental health evaluation. Mother was asked to provide evidence of compliance to include paystubs, a lease, releases, etc. TPR Hr'g, 7/19/2024, Ex. 2 at 11, 14, 16. However, Mother did not maintain employment or housing. Mother declined services with Early Intervention for P.O.J. that had been court-ordered, and the Agency had to step in and consent. *Id.*, Ex. 3, at 3. Additionally, Mother did not cooperate with drug testing. For example, prior to the filing of the TPR

8

petition, Mother's call-in compliance rate with Averhealth since adjudication was only 3%. Tr., 7/19/2024, at 96. Mother no-showed sixty-six times. Since the beginning of January 2024, her call-in compliance rate was 25%. *Id.*, at 44. After the filing of the TPR petitions and after Mother's most recent release from incarceration, her call-in compliance rate was 91% in July 2024, and 92% in August 2024. Mother tested positive for alcohol on five occasions in July and August 2024 and once for THC through Probation and once through Averheath in September 3, 2024, three days before the final day of the termination hearing. Only as of August 25, 2024, about two weeks before the final day of the termination hearing, Mother got her medical marijuana card and provided notice to the agency the following day. Three weeks before the last day of the TPR hearing, Mother reached out to the Agency, after her second incarceration, and asked for a mental health evaluation. A referral was made to Hugh Smith Associates. Ms. Swarr testified that approval is pending with insurance to complete the evaluation. Tr., 7/19/2024, at 96. Likewise, regarding housing, Mother testified that the day before the TPR hearing she received approval for a voucher that will provide her with rental assistance for a few months. However, she still now needs to find a home. Finally, Mother has been employed full time at a Starbucks factory for three weeks prior to the final day of the TPR hearing.

Mother testified and then addressed the court directly at the close of the TPR hearing. Mother told the court that she knew that she had made a lot of mistakes while her children were in placement, mainly from being scared. Tr., 9/6/2024, at 89. Mother acknowledged wasting a lot of time with being on the run. *Id.*, at 90. Mother noted the progress she has made in the weeks since release from her second incarceration and that she has taken care of the jail time and her fines. Mother indicated that she loves her kids and is ready to work toward getting them back.

Although the court believes that Mother loves her children and has made recent progress, the court noted that Mother had not made enough progress. After twenty months of dependency for the three oldest children and over ten months for the youngest child, Mother still has pending charges related to endangering her children, which may require a longer term of separation. Mother has not demonstrated the necessary stability with missed visits. Mother still needs to complete a mental health evaluation and any recommendations that may result. Mother still does not have housing, and although she has now secured financial assistance with initial rent payments, it is not clear to the court how long it may take to find appropriate housing. Meanwhile, the children's need for permanency continues. The second youngest child, P.O.J., was adjudicated dependent at around five months old, and the baby, S.A.J., was removed from Mother's care within his

10

first week and has only known the resource parent as his parental figure. The court explained that its focus must be on the best interest of the children and granted termination. This appeal followed.

## ISSUES ON APPEAL

Mother's concise statement are as follows:

1. *York County Office of Children Youth and Families ... failed to present clear and convincing evidence that termination of Mother's parental rights best served the physical and emotional needs and welfare of the minor child under 23 Pa.C.S. [§§] 2511(a)(1), (a)(2), (a)(5) and (a)(8) and [§] 2511(b).*
2. *The trial court erred in terminating Mother's parental rights to the minor child without clear and convincing evidence that termination best served the physical and emotional [] needs and welfare of the minor child under 23 Pa.C.S. [§§] 2511(a)(1), (a)(2), (a)(5) and (a)(8) and [§] 2511(b).*

## DISCUSSION

The standard of review by the Superior Court of an appeal from a decree terminating parental rights is limited to determining whether the decision of the trial court is supported by competent evidence. *In re K.C.W.*, 456 Pa. Super. 1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, the Superior Court must accord the trial judge's decision the same deference given to a jury verdict. *In re Child M.*, 452 Pa. Super. 230, 681 A.2d 793, 800 (1996). The

11

Superior Court employs a comprehensive review of the record to determine whether the trial court's decision is supported by competent evidence. *In re Matsock*, 416 Pa. Super. 520, 611 A.2d 737, 742 (1992). The "[p]ermissible grounds for involuntary termination of parental rights are specified in 23 Pa.C.S.A. § 2511," as discussed above. *In re C.S.*, 2000 Pa. Super 318, ¶¶ 8-9, 761 A.2d 1197, 1199–200 (Pa. Super. Ct. 2000).

Importantly, the court must only find one factor pursuant to 23 Pa.C.S.A. § 2511(a) to terminate parental rights. The relevant 2511 sections to Mother's appeal are as follows:

(a) General rule. — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the

12

removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) Other considerations. --The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b).

The court determined York County Children Youth and Families presented clear and convincing evidence to the court that termination of Mother's parental rights best served Child's emotional needs and welfare under 23 Pa.C.S.A. §§ 2511 (a)(1), (2), and (8) and § 2511(b) of the Adoption Act.

## I. Termination of parental rights is warranted under section (a)(1).

There are clearly grounds to terminate Mother's parental rights under 23 Pa.C.S. § 2511(a)(1). Under section (a)(1), the moving party in terminating parental rights must show the parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties. 23 Pa. C.S. § 2511(a)(1). The focus of this subsection is on the conduct of the parent. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001) (citation

13

omitted). Although the six months before a petition is filed are critical to a determination, a court considering termination of parental rights must weigh the history of the case and determine if termination is warranted on a totality of the circumstances. *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004). A parent must make a "sincere and genuine effort" to maintain a relationship, use all available resources to preserve the bond, and resist obstacles. *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004). The Supreme Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'

*In Interest of A.P.*, 692 A.2d 240, 245 (Pa.Super. 1997) (citing *In re Burns*, 379 A.2d 535 (Pa. 1977)).

Analyzing 23 Pa.C.S.A. § 2511(a)(1) in relation to this case, it is clear from the record that CYF offered clear and convincing evidence that Mother has refused or failed to perform parental duties for at least six months immediately preceding the filing of the petition to terminate her parental rights to the three oldest children. At termination, Mother had supervised visits for one hour each week, which never

14

progressed to unsupervised or partially unsupervised, and which had to be decreased due to Mother's absences from Children while on the run and during periods of incarceration. Mother's incarcerations, time out of state, and refusal to attend certain visits if all the children could not be present, for example, presented a hindrance to her ability to perform parental duties. Due to Mother's challenges with multiple incarcerations, lack of housing, and lack of employment, Mother was not able to provide either the physical or emotional support that Children needed.

The court did hear testimony that Mother brought items for Children to visits, Christmas gifts, and initially attended Children's medical and dental appointments. However, Mother stopped attending these appointments, saying that she no longer received notice and acknowledged that she did not inquire about these appointments. Although Mother has made progress after the filing of the petition to terminate her parental rights, the court must consider the totality of the circumstances. Mother has not addressed issues on a systematic or regular basis. The court recognizes that Mother has made efforts, but they have not been diligent and sustained efforts. *Id.*, at 32. CYF has provided sufficient evidence under 23 Pa.C.S.A. § 2511(a)(1) that Mother has failed to perform parental duties for well beyond the previous six months prior to the filing of the petition to terminate parental rights.

## II. Termination of parental rights is warranted under section (a)(2).

15

There is sufficient evidence to terminate Mother's parental rights under 23 Pa.C.S. § 2511(a)(2). This subsection can be broken down into three elements: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.* 825 A.2d 1266, 1272 (Pa.Super. 2003) (citations omitted). Unlike subsection (a)(1), this subsection "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being." *In re E.A.P.*, 944 A.2d 79, 82 (Pa.Super. 2008) (citations omitted). The children cannot wait for a parent until he or she is prepared to take on parental responsibilities. *Id.* at 83. Sincere efforts to perform parental duties can preserve the rights of a parent under subsection (a)(1) but may be insufficient as to capacity to parent under subsection (a)(2). *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010) (citations omitted).

In regard to 23 Pa.C.S.A. § 2511(a)(2) and this case, it is clear from the record that CYF offered clear and convincing evidence that abuse, neglect and refusal by the Mother has caused all four children to be without essential parental care necessary for their mental well-being and the conditions and causes of the abuse, neglect and refusal will not be remedied by the parent. The Court incorporates its

summary of the facts in this case here and its answer under the previous factor. Here, Mother's refusal or inability to comply with services, get evaluations, maintain employment, maintain consistent visits, or maintain housing throughout the reunification period has caused the children to continue to be without essential parental care for their mental and physical wellbeing. It is not clear to the Court that the causes of Mother's abuse, neglect, or refusal will be remedied, despite Mother's recent progress made after the filing of the petition for termination and after the first day of the TPR hearing. Mother was involved with CYF from 2017 to 2022 and from January 2023 to present. This history certainly calls into question whether Mother will be able to remedy the conditions and causes of abuse, neglect, and refusal by Mother. Mother did not progress to unsupervised visits with Children who have been in placement for over twenty months, regarding the oldest three. The youngest child, S.A.R., was only in Mother's care for a couple of days out of concern for his medical well-being and has only known the resource parent as a parental figure. The court acknowledges that Mother's compliance is better now, after her most recent release from incarceration a few weeks prior to termination. Yet, the court also heard testimony during the adjudicatory period, that Mother had numerous addresses, was incarcerated, went on the run to Florida, and was incarcerated again after her return. In twenty months, Mother has not maintained consistent visits, employment, or housing. Mother has not submitted to a mental health evaluation and had almost no

17

compliance with drug and alcohol testing, until after the filing of the termination petition. Given the amount of time Mother has been receiving services or has been involved with CYF, her minimal progress, the court remains concerned that the causes of Mother's abuse, neglect or refusal will not be remedied. CYF has provided sufficient evidence under 23 Pa.C.S.A. § 2511(a)(2) that Mother's abuse, neglect and refusal has caused Children to be without essential parental care necessary for their mental well-being, and the conditions and causes of the abuse, neglect, and refusal will not be remedied by Mother.

## III.  Termination is warranted under section (a)(5) for Mother.

In addition, there are grounds to terminate Mother's rights under 23 Pa.C.S. § 2511(a)(5). This subsection can be broken down into five elements: (1) the child has been removed from parental care for at least six months; (2) the conditions that led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. See In re M.E.P., 825 A.2d 1266, 1273-74 (Pa.Super. 2003) (citation omitted). "[O]nce a child is removed from the care of a parent, the burden is on the

18

parent to take action to regain parental rights." *In the interest of B.C.*, 36 A.3d 601, 609 (Pa.Super. 2012) (citation omitted).

Here again, the court incorporates its responses above. The three oldest children have been adjudicated dependent for more than six months. The conditions that led to Children's removal, such as lack of lack of housing and supervision, alcohol concerns, mental health concerns, etc., remain. After twenty months, it is not clear that Mother will be able to remedy these conditions in a reasonable time. Although Mother now has a housing voucher, she still has to find suitable housing for herself and four children. Mother still has to comply with a mental health evaluation for which an intake had not been done at the time of termination and comply with any recommendations. Additionally, Mother still has pending charges, and depending on the outcome, Mother may need to complete a threat of harm evaluation and work toward any recommendations. It is likewise not clear to the court that the services available to Mother are likely to remedy the conditions within a reasonable time. The court notes that even with the services, Mother has not yet progressed to having any unsupervised or partially unsupervised visits with her children. Mother's absences necessitated a period of adjustment to allow Children time to transition. For example, with the resumption of visits upon mother's second release from incarceration, P.O.J. initially cried and did not want to leave the resource parent. Tr., 7/19/2024, at 64-65. Additionally, the resource parents reported

19

that after the resumption of visits, P.O.J. has started hitting after visits, was agitated, and was not able to fall asleep. Tr., 9/6/2024, at 56. Various issues were identified when Mother was accepted for services in the past. Years later, issues such as lack of housing have persisted.

Termination serves the needs and welfare of Children who need permanency, stability, and support. For example, Z.A.C.S, whose truancy issues caused her to be behind in her classwork, necessitating that she attend summer school in order to be promoted to the first grade, made the honor roll last year. Tr., 9/6/2024, at 33-34.; TPR Hr'g, 7/19/2024, Ex. 1 at 2. Additionally, she has improved in her parentified behaviors, interacting with her siblings more as an older sibling rather than a parent. Both girls continue to receive weekly therapy. Child, P.O.J., continues to receive occupational and physical therapy through Early Intervention in the resource home, and S.A.J. is involved with Early Intervention as well. All of the children are doing well and have their needs met with their resource families who also make sure that the children have visits with their siblings.

### III. Termination of parental rights is warranted under 23 Pa.C.S.A 2511 (8)

Once the child has been removed from the care of the parent, the burden is on the parent to take action to regain parental rights. See *In re Z.P.*, 2010 PA Super 56, 994 A.2d 1108, 1118-19 (Pa. Super. 2010) (holding that parental obligation is a positive duty which requires affirmative performance). We do not permit parental inertia to

20

toll the permanency needs of the Child. *In re N.M.B.*, 2004 PA Super 311, 856 A.2d 847, 856 (Pa. Super. 2004) ("[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment."). Although a parent has cooperated with CYS in providing the necessary releases, when the fact remains that the parent's mental and emotional issues, which require additional treatment, remained unaddressed at the time of the termination hearing, the issues that lead to placement continue to exist. *In the Interest of B.C.*, 36 A.3d 601, 609-610, 2012 Pa. Super. LEXIS 7, *18, 2012 PA Super 7.

When examining claims in relation to Section 2511(a)(8), the court follows established case law. In order to demonstrate that termination is proper pursuant to Section 2511(a)(8), CYS must prove by clear and convincing evidence that: (1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *In re C.L.G.*, 2008 PA Super 198, 956 A.2d 999, 1005 (Pa. Super. 2008). Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of CYF services. *In re D.A.T.*, 91 A.3d 197,

205, 2014 Pa. Super. LEXIS 228, *19, 2014 PA Super 86, 2014 WL 1687812.

Where a parent has addressed some of the conditions that led to a child's removal, but other conditions still exist, this element may be deemed to be satisfied. See *In re C.L.G.*, 2008 PA Super 198, 956 A.2d 999, 1005 (Pa. Super. 2008) (en banc).

Under 23 Pa.C.S.A. § 2511(a)(8), it is clear from the record that CYF offered clear and convincing evidence that the three oldest children have been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist, and termination of parental rights would best serve the needs and welfare of the child. The three oldest children were adjudicated dependent on January 18, 2023; therefore, more than twelve months have elapsed since the Children were removed from the care of Mother. The court incorporates its summary of the facts and answers above regarding the continued existence of conditions that led to removal. The court stresses again that, at this time, termination would serve Children's needs and welfare. Although, Mother has made progress in the weeks leading to termination, such as securing employment, signing up for a housing voucher, requesting a mental health evaluation, securing a medical marijuana card, and improving her call-in rate with alcohol and drug testing, the court may not consider these late efforts under this factor. Mother has never progressed to unsupervised visits, and the three oldest

22

children have already been dependent for twenty months. The children have a wonderful parental bond with the resource parents, and termination would best serve Children's needs and welfare at this time, as will be discussed below. Mother has not been able to provide for Children's developmental, physical, or emotional needs. Child's needs are being met by the resource parents.

CYF has provided sufficient evidence under 23 Pa.C.S.A. § 2511(a)(8) that Child has been removed from the care of the Mother by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist, and termination of parental rights would best serve the needs and welfare of the child.

## IV. Termination of parental rights is in the best interests of Child.

A court must give primary consideration "to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The bond between parent and child must be examined, to determine if termination would destroy an existing, necessary, and beneficial relationship. *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quoting *In re T.B.B.*, 825 A.2d 387 (Pa.Super. 2003)). A child has the right to care in a permanent, healthy, safe environment. See *In re K.M.*, 53

23

A.2d 781, 792 (Pa.Super. 2012) (citing *In re Adoption of R.J.S.*, 901 A.2d at 507). "[T]he mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition . . . courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 267-68 (Pa.Super. 2013) (citations omitted). Additionally, appellate courts have stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

The trial court is not required by statute or precedent to order that a formal bonding evaluation be performed by an expert. *In re K.K.R.-S.*, 2008 PA Super 231, 958 A.2d 529, 533 (Pa. Super. 2008). There are some instances where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child. *Id.*, 946 A.2d at 762. This Court explained that, in cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. Id. at 763.

As stated in the statute: The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing

and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

In 2023, the Pennsylvania Supreme Court issued a ruling that clarified for Pennsylvania trial courts that determinations of whether involuntary termination meets a child's needs and welfare requires a multi-factor analysis that cannot be limited to merely whether a parent-child bond exists that would be adverse to terminate. The Court explains that the multi-factor needs and welfare analysis in termination-of-parental-rights cases requires applying a "necessary and beneficial" standard in considering the parent-child bond as one of those factors.

> "But a court conducting the Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond. We emphasize analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, i.e., whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare.
>
> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care . . . ; whether the child is in a pre[-]adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability . . . . The court must not truncate its analysis and preclude severance based solely on evidence of an "adverse" or "detrimental" impact to the child. Therefore, to grant termination when a parental bond exists, there must

25

be clear and convincing evidence that the bond is not necessary and beneficial.

. . .

As we have explained, "an emotional bond" with a parent is legally insufficient to preclude termination of parental rights without determining whether such bond is necessary and beneficial to the child and weighing the other factors present in the record. Likewise, an "adverse effect" or "detrimental impact" of severance alone cannot demonstrate a necessary and beneficial bond.

*In the Interest of K.T.*, 296 A.3d 1085, 1105, 1113-15 (Pa. 2023)

In analyzing this case under 23 Pa.C.S.A. § 2511(b), it is clear from the record that CYF offered clear and convincing evidence that the developmental, physical, and emotional needs and welfare of Children is best served by terminating parental rights. Regarding Children's bond, the court heard testimony that the two oldest children have a wonderful and healthy relationship with Margie Morris, their kinship placement and that a pre-adoptive resource has been identified. Tr., 7/19/2024, at 46-47; Tr., 9/6/2024, at 17, 36. The resource parent provides comfort and support. The girls are old enough to know Mother and they have expressed their desire to live with her as their first choice. However, Caseworker Swarr testified that Z.A.C.S.'s bond with Mother is not healthy due to the parentification issue and that Y.A.M. has a familiar bond, knowing who Mother is, but the relationship is not parental. Tr., 9/6/2024, at 14-15. The caseworker also reported that P.O.J.'s bond with Mother is familiar but not parental and noted that after recent visits, he's been defiant, hitting, and spitting. *Id.*, at 15. The caseworker also testified that S.A.J. does not have a

26

parental bond with Mother. Child is only about ten months old and has never lived with Mother. *Id.* The youngest children are bonded to their resource parents who are their pre-adoptive resource. *Id.*, at 18, 36; Permanency Review Hr'g, (P.O.J.), 5/29/2024, at 3.

Maintaining the bond does not serve the Children's developmental, physical, and emotional needs. Unfortunately, the nature of Mother's instability with employment, housing, sporadic visits, mental health concerns, etc., impact the Children's developmental, physical, and emotional needs. Since January 18, 2023, and February 18, 2023, Children's needs have been and are being addressed by the resource families with whom Children are bonded. Z.A.C.S.'s improvement in school and with parentification is a prime example. Z.A.C.S.'s and Y.A.M.'s therapist, Ellie Williams, testified that termination of parental rights would not cause the children emotional harm or long-term negative impact. Tr., 7/19/2024, at 38-39. Ms. Williams testified that it would be a difficult process, but that it could be worked through with appropriate therapeutic support, which her services would provide. *Id.*

Resource parents meet Children's intangible needs for love, comfort, safety, and stability, as well as, their physical and developmental needs related schooling, therapy, Early Intervention, etc. Although the oldest children have a bond or relationship with Mother, there is clear and convincing evidence on the record that the bond is not necessary and beneficial to Children. The three oldest children have

27

been in placement for over twenty months as of the date that termination of parental rights was granted. All the Children's need for permanency is paramount at this time. CYF has provided clear and convincing evidence under 23 Pa.C.S.A. § 2511(b) that the parental bond in this case is not necessary and beneficial to Child. The court also notes that the *guardian ad litem* for all four children testified that they are all thriving in their current placements and that terminating Mother's parental rights is appropriate at this time. Tr., 9/6/2024, at 87-88.

In summary, CYF provided clear and convincing evidence that termination best served Children's emotional needs and welfare under 23 Pa.C.S.A. § 2511(a)(1), (a)(2), and (a)(8) and under § 2511(b). Therefore, the Court did not err in finding that Mother's conduct met at least one of the grounds for termination under the statute.

In this case, the court notes Mother's efforts and her current progress and does not doubt that she loves Children and hopes to provide for them. However, in reviewing termination of parental rights, the Superior Court has stated that "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 2006 Pa. Super 127, ¶ 29, 901 A.2d 502, 513 (Pa. Super. Ct. 2006). The court believes that termination is in Child best interest at this time.

28

## CONCLUSION

After review of the record and for the foregoing reasons, the court hereby reaffirms its order terminating Mother's parental rights entered on September 6, 2024.

BY THE COURT,

_____
N. CHRISTOPHER MENGES, JUDGE